UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF NEW YORK
-------------------------------------------------------x
JAMES D. HILTON 16A4943

                         Plaintiff,

    -against-

Deputy Superintendent of Security CARINGI,
et. al.,
                    Defendants
-------------------------------------------------------x

COMPLAINT

CIVIL ACTION NO.

JURY TRIAL DEMANDED

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
FEB 1 6 2023
AT_____ O'CLOCK_____
John M. Domurad. Clerk - Syracuse

## I.    Complaint

Plaintiff, James D. Hilton, *pro se*, for their complaint state as follows:

## II.    Parties, Jurisdiction, and Venue

1. Plaintiff, James D. Hilton, is confined in the State Correctional Facility of Great Meadow, located at box 51, Comstock, New York 12821-0051 and was confined at that location on the day of the complaint.

2. Plaintiff, James D. Hilton, is, and at all times mentioned herein, an adult citizen of the United States and a resident of the State of New York

3. Defendant Mr. Caringi, is and was at all relevant times herein the Deputy Superintendent of Security at Great Meadow Correctional Facility

4. Defendant * Mahan is and was at all relevant times a Correctional Officer at Great Meadow Correctional Facility

5. Defendant * McDonald is and was at all relevant times a Correctional Officer at Great Meadow Correctional Facility



6.    Defendant Sergeant * Mason is and was at all relevant times a
      Correctional Officer Sergeant at Great Meadow Correctional Facility

7.    Defendant * La Fountain is and was at all relevant times a
      Correctional Officer at Great Meadow Correctional Facility

8.    Defendant * Raimo is and was at all relevant times a Correctional
      Officer at Great Meadow Correctional Facility

9.    Defendant C. Watkins, is and was at all relevant times the lead
      Medical Nurse Administrator / Provider at Great Meadow
      Correctional Facility

10.   Defendant John Doe #1 was at all relevant times a member of New
      York State's Department of Corrections and Community
      Supervision's Community Emergency Response Team deployed at
      Great Meadow Correctional Facility

11.   Defendant John Doe #2 was at all relevant times a member of New
      York State's Department of Corrections and Community
      Supervision's Community Emergency Response Team deployed at
      Great Meadow Correctional Facility

12.   Defendant John Doe #3 was at all relevant times a member of New
      York State's Department of Corrections and Community
      Supervision's Community Emergency Response Team deployed at
      Great Meadow Correctional Facility

13.   Defendant John Doe #4 was at all relevant times a member of New
      York State's Department of Corrections and Community
      Supervision's Community Emergency Response Team deployed at
      Great Meadow Correctional Facility

14.   Defendant John Doe #5 was at all relevant times a member of New
      York State's Department of Corrections and Community
      Supervision's Community Emergency Response Team deployed at
      Great Meadow Correctional Facility

15.    Defendant John Doe #6 was at all relevant times a member of New York State's Department of Corrections and Community Supervision's Community Emergency Response Team deployed at Great Meadow Correctional Facility

16.    Defendant John Doe #7 was at all relevant times a member of New York State's Department of Corrections and Community Supervision's Community Emergency Response Team deployed at Great Meadow Correctional Facility

17.    Defendant John Doe #8 was at all relevant times a member of New York State's Department of Corrections and Community Supervision's Community Emergency Response Team deployed at Great Meadow Correctional Facility

18.    Defendant John Doe #9 was at all relevant times a member of New York State's Department of Corrections and Community Supervision's Community Emergency Response Team deployed at Great Meadow Correctional Facility

19.    Defendant John Doe #10 was at all relevant times a member of New York State's Department of Corrections and Community Supervision's Community Emergency Response Team deployed at Great Meadow Correctional Facility

20.    Defendant Jane Doe #1 was at all relevant times a Agent of New York States Office of Special Investigation supervising the Facility wide search at Great Meadow Correctional Facility

21.    Defendant Jane Doe #2 was at all relevant times a Agent of New York States Office of Special Investigation supervising the Facility wide search at Great Meadow Correctional Facility

22.    Defendant Tom Smith #1 was at all relevant times a Member of New York States Hostage Response Team deployed at Great Meadow Correctional Facility

23.     Defendant Tom Smith #2 was at all relevant times a Member of New York States Hostage Response Team deployed at Great Meadow Correctional Facility

24.     Defendant Tom Smith #3 was at all relevant times a Member of New York States Hostage Response Team deployed at Great Meadow Correctional Facility

25.     Defendant Tom Smith #4 was at all relevant times a Member of New York States Hostage Response Team deployed at Great Meadow Correctional Facility

26.     This action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the deprivation, under color of the state law, of rights guaranteed by the eight and fourteenth amendments to the United States Constitution. This court has jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1343.

27.     Plaintiff's claims for injunctive relief are authorized by rule 65b of the Federal Rule of Civil Procedure

28.     This cause of action arose in the Northern District of New York. Therefore venue is proper under 28 U.S.C. section 1391(b)

**III.    Previous Lawsuits by Plaintiff**

29.     Plaintiff has filed other lawsuit dealing with the same facts involved in this action.

30.     The Parties to the previous lawsuit are the Plaintiffs in this action, and the defendants were New York State Department of Corrections and Community Supervision, New York State Office Of Special Investigations, New York State Hostage Response Team, in that lawsuit

**IV. Exhaustion of Administrative Remedies**

31.     There is a Prisoner grievance procedure in Petitioner's Correctional facility.

4

32.    The facts relating to the present complaint were presented in the prisoner grievance procedure.

33.    Steps taken for complaint 1:

(a)    On 6/29/22 grievance filed with Inmate grievance Committee (IGRC) pertaining to being assaulted in two separate incidences by Correctional Officers

(b)    On 8/24/22 letter written to Superintendent of the Correctional facility stating that Petitioner never receiving a hearing or a reply in regards to the grievance.

(c)    On 9/2/22 Petitioner filed a complaint to Central Office review Committee (CORC) about Great Meadow Correctional Facility's IGRC not answering complaint about being assaulted twice.

(d)    Grievance resulted in "Constructive Denial"

34.    Steps taken for complaint 2:

(a)    On 7/26/22 grievance filed with Superintendent of the Correctional Facility about being placed In the Special Housing Unit (SHU) for 24 days based on Misbehavior Report where all charges were dismissed.

(b)    On 8/8/22 Petitioner received correspondence from Great Meadow Correctional Facility's IGRC stating that it has been given issue number "GM#,445-22) and that the grievance office is currently investigating the complaint.

(c)    On 8/8/22 Petitioner received correspondence from the Superintendent of Great Meadow Correctional Facility stating, "After reviewing the issues set forth with relevant documentation, this grievance is unfavorable...."

(d)    On 8/30/22 Petitioner received correspondence from Great Meadow Correctional facility IGRC stating "the committee advises that the determination on this grievance is unfavorable..."

(e)    Grievance resulted in

35.    Steps taken for complaint 3

(a)    On 6/26/22 Petitioner filed grievance with IGRC about not receiving medical attention after being assaulted by staff. Petitioner requested x-rays of both sides of his ribs, C.A.T. scan and M.R.I. of his spine neck and skull, M.R.I. of his chest cavity, M.R.I. of his shoulder, M.R.I. of both of his wrists, concussion protocol, pain management by the way of medication, and testing on the extensive nerve damage with a special attention to his hands.

(b)    On 7/18/22 Petitioner received correspondence from Great Meadow Correctional Facility IGRC stating that the complaint is being investigated and he was given the issue number GM#, 369-22

(c)    On 7/18/22 Petitioner received correspondence from the Superintendent for Great Meadow correctional Facility stating that his "grievance is favorable to the extent that the grievant was seen by medical on multiple occasions. The Grievant has had C.A.T. scan, but no follow-ups of examinations regarding x-rays or C.A.T. scan. Grievant was given pain medication.

(d)    On 7/30/22 Petitioner received correspondence from IGRC investigation stating, "[Petitioner] was seen by a [medical] provider on 6/21/22...X-rays of facial and nasal bones were negative. [Petitioner] was also seen that evening for care of facial discomfort...Pain medication was prescribed and x-rays and of chest and ribs were ordered...[Petitioner was seen again on 7/4/22 asking for x-ray and M.R.I....[Petitioner] was seen 7/7/22...x-rays of ribs and chest were completed... no further treatment was deemed necessary."

(e)    Petitioner received correspondence from Great Meadow Correctional Facility IGRC stating "...the determination on this grievance is favorable to the extent that, after conducting a hearing, the IGP sergeant phoned medical and got grievant an appointment immediately...

6

(f)    Grievance resulted in

## V.    Departmental Searches (F.O.I.L. -Informal)

36.    There is a Freedom Of Information procedure in Petitioner's Correctional facility and State.

37.    The facts relating to the present complaint were requested under the freedom of information law

38.    Steps taken for request 1:

(a)    On 6/26/22 Petitioner wrote the Facility's FOIL officer requesting all of the gallery footage from E-Block, 4 Company and E-Block 3 company from 9:30am leading up to the incident that took place at his cell E-4-8 at 10:15am. As well as all footage from the incident in addition to all of the camera footage of him being escorted from his cell off of E-Block 4 Company, down the stairs, through the rotunda, through the hallway to medical and to the examination room in which the second incident took place at around 10:020am. He requested all the footage of the second incident as well as all of the footage of him walking in the halls to the Special Housing Unit for processing until he was finally placed inside of F-Block 1 Company 18 Cell.

(b)    On 7/5/22 Petitioner wrote the Facility's FOIL officer making identical requests to the requests made in subsection (a) of this section.

(c)    FOIL resulted in

39.    Steps taken for request 2:

(a)    On 8/5/22 Petitioner wrote great Meadow Correctional Facility's FOIL officer requesting full identification of all CERT officers and their superiors that were present for the facility wide Great Meadow search and the name of the CERT members present during the seizure of Petitioner from his cell.

(b)    On 8/5/22 Petitioner wrote great Meadow Correctional facility FOIL officer requesting the names of all Office of Special Investigations (OSI) agents that were present during the facility wide search at Great Meadow Correctional Facility

(c)    On 8/23/22 DOCCS records access officer wrote Petitioner acknowledging receipt of the requested documents and stated that his request has been forwarded to the appropriate program area(s) to identify documents that are responsive to your request and which may be made available.

(d)    On 8/24/22 DOCCS FOIL Specialist wrote petitioner stating that the unit was in the process of attempting to determine what, if any, records are available concerning his request

(e)    On 9/8/22 DOCCS Assistant Records Access Officer wrote Petitioner stating that the records he requested are exempt pursuant to Public Officers Law §87 (2)(g) and Public Officers Law (2)(e) because the records requested are part of an open investigation and are therefore interagency, non-final, deliberate records.

(f)    On 9/22/22 DOCCS FOIL Log No. CO-22-08-382, The Office of Special Investigation records "requested--are part of an open and ongoing investigation, and are therefore interagency, non-final, deliberation records. Once the investigation is complete, subjects of the investigation will receive the determination and you may renew your request for records."

40.    Steps taken for request 3:

(a)    On 8/1/22 Petitioner wrote to the FOIL office of NYS DOCCS requesting the Unusual incident report of the facility wide incident that took place at Great Meadow Correctional Facility on 6/21/22

(b)    On 8/1/22 Petitioner wrote the FOIL office of NYS DOCCS requesting the following documents in connection to the incident took place on 6/21/22 in which Petitioner received two disciplinary tickets; unusual incident report, use of force, memorandums from staff, contraband receipts, strip frisk forms, incarcerated individual's

8

medical report, lo0gbook entries, witness statements, photographs, all video (gallery, block, hallway, body cameras, hospital, ect.), staff medical reports of who claimed injury, witness statement refusal forms, and the tier assistance form that was filled out and submitted

(c)    On 824/22 Petitioner received correspondence from NYS DOCCS FOIL officer stating that the documents he requested are not maintained by the departments central office, and that they are referring his request to the FOIL officer at Great Meadow Correctional Facility. Facility F.O.I.L. Office is not responding to any of the petitioner requests.

41.    Steps taken for request 4:

(a)    On 9/2/22 Petitioner wrote NYS DOCCS Office of the counsel and FOIL Appeals officer stating that the reason that he writing the office is because the Great Meadow FOIL officer was not responding to his requests and still is not.

(b)    On 9/23/22 Petitioner received correspondence from NYS DOCCS FOIL appeals officer stating that initially, in his appeal letter it is unclear which initial requests he is appealing and states Department Directive 2010 saying that a requestor must reasonably describe the records they seek, both on initial request and appeal. The appeals officer then stated that they still contacted the FOIL officer at Great Meadow to search for recent requests submitted by petitioner. Then stated the initial request was denied as being too vague.

## VI.   Statement of Claim

42.    At all relevant times herein, defendants were "persons" for purposes of 42 U.S.C. section 1983and acted under color of law to deprive plaintiff of their constitutional rights, as set forth more fully below

## VII.   Statement Of Facts

a. The Deputy superintendent of Security Caringi ordered for the arrival and assistance of N.Y.S. D.O.C.C.S C.E.R.T. in the search/frisking of the entire facility from the dates of 6/20/22 thru 6/28/22. Throughout the time frame of the facility lockdown for the searches Dep. Caringi was on the grounds (in the blocks that were being searched) of the facility; and was negligent in his supervision of the officers who he himself called in to assist in the search, as well as negligent in stopping the two assaults that took place against Claimant.

b. The Office of Special Investigations, which is in charge of overseeing all New York State's Departments and Agencies, was also inside of Great Meadow Correctional Facility during the time of the entire facility search. The "OSI Officers", were stationed at the front of every company that was being searched and the Hostage Response Team (referred to as Tom Smith #1, Tom Smith #2, Tom Smith #3, Tom Smith #4 and Tom Smith #5). The Office of Special Investigations was negligent in its supervision of the officers of C.E.R.T who were called into the facility.

Members of Community Emergency Response team were called into Great Meadow Correctional Facility to conduct a search of the entire facility as well as all of the cells of the incarcerated individuals in the facility.

c. Approximately 5 members of the team intentionally assaulted claimant on 6/21/22 at Great Meadow Correctional Facility, E-Block, 4 Company, 8-cell. Officers posed as if doing a search of claimant's neighbor cell (cell 9), skipped his cell; and Correctional Officer Mahan and McDonald with 3 unidentified officers (identified as John Doe #1, John Doe #2, John Doe #3,) immediately entered claimant's cell and began to assault him. A Sergeant Mason claims to have been present at the time of the assault; noted by his endorsement of a misbehavior report.

d. As the 5 officers were active in the assault against claimant in his cell there were about 25 to 30 other C.E.R.T. members and Hostage Response Team Unit officers on the company directly out side of complainant's cell observing the assault as it took place and listening to claimant scream in agony and for help. The C.E.R.T. members that were not active in the assault were negligent for failure to intervene. The Hostage response members present were negligent for failure to intervene.

e.  Claimant was slammed against the cell wall then held while others choked, punched, kicked, elbowed, kneed, and pepper sprayed him several times

f.  Claimant was struck in the face, the back of the head, the ribs, the abdomen, the groin area as well as had one hand cuff placed on his left wrist and then had the restraint twisted in order to manipulate the joint and cause deep cuts into the wrist area.

g.  Throughout the assault complainant was yelling and screaming for help to the OSI officers (referred to as Jane Doe #1 and Jane Doe #2) who were about 50 feet away at the front of the company. Other incarcerated individuals were in their cell screaming for the OSI officers to help claimant and intervene in the assault, but their attempts were to no avail.

h.  As the initial assault came to an end, Correctional Officer Mahan slammed claimant onto his bed and drove his knee into claimant's left temple, which he left in position, pinning claimant's head to the metal of his bed frame. With the officer's shin chin across carotid artery cutting off the oxygen to the brain (claimant began losing consciousness), the officer then began to pepper spray claimant directly up the nose, and claimant was sprayed multiple times after.

i.  With the claimant coughing and barely able to breath, the officers applied the final cuff to Hilton's right wrist and Officer La Fountain dragged claimant by the hair and cuffs off of E block, 4 company and to the Facility Hospital. Two misbehavior reports were issued against Claimant in which one officer wrote and was endorsed by two other officers where they admitted the fact that "...body holds, strikes, OC spray, and mechanical restraints were used...", all charges brought against claimant in the misbehavior report were later dismissed[1]. The Members of C.E.R.T. were intentional in their assault against claimant.

---

[1] Deputy Superintendent of Security Caringi stated; "there was no Unusual Incident Report for your incident and that the Unusual Incident Report was part of the June 19th, 2022 incident (riot & 9 day search)" He stated this to claimant in the Special Housing Unit.

j. New York State Hostage Response Team is a specialized unit called into facilities during times of emergencies. This Team was also present in Great Meadow Correctional Facility and participated in cell searches of Incarcerated Individuals during the period of 6/20/22 - 6/28/22. While claimant was being assaulted in his cell on E-Block, 4-company, 8-cell the H.R.T. was also in E-Block and could hear claimant as well as other Incarcerated Individuals scream for someone to help claimant during the assault. H.R.T. Members were negligent for failure to intervene in the assault on Claimant (Referred to as Tom Smith #1, Tom Smith #2, Tom Smith #3, Tom Smith #4).

k. After being previously assaulted by C.E.R.T. members in his cell claimant was then brought to Great Meadow Correctional Facility's hospital by C.E.R.T. As he entered into examination room #1, officer Raimo led the escort into the examination room when three officers as well as Officer La Fountain dragged claimant into the room by having hold of claimant's hair and hand cuffs.

l.  Immediately 3 CERT officers as well as officers Raimo and La Fountain, began to again attack claimant. Claimant was grabbed by his throat and struck in the face, back of the head, chest, the sides of his ribs, solar plexus, as well as his abdominal area, all while claimant was in hand restraints. As claimant screamed for help, CERT officers ordered claimant to "shut up" and then tried to render him unconscious with front hand chokes blocking his airway with an intention to crush his windpipe. Claimant had already been previously sprayed with "O.C. spray" multiple times during a previous attack on him just moments before and had been coughing up blood and phlegm during the current attack as C.O. Raimo pepper sprayed in exam-room #1.

m. The officers then stood claimant to his feet and placed a "spit net" over his head further complicating his breathing. Then claimant was ordered to allow the CERT officers to clean the blood off of his face and body before taking pictures and because the Physicians assistant was approaching. Officers then began wiping down blood from floors and walls. The Members of C.E.R.T. (Several sergeants looked into the room and did nothing) and the corrections officers were intentional in their assault against claimant (Referencing John Doe #4, John Doe #5, John Doe #6, John Doe #7, John Doe #8, John Doe #9, John Doe #10).

n. As HRT officers were occupying the Great Meadow Correctional Facility, they were present in the hospital corridor when the second assault took place against claimant. They could hear him screaming in pain and for help and did nothing to assist him or stop the assault from taking place. HRT was negligent for failure to intervene in the second assault against claimant (referencing Tom Smith #4, Tom Smith #5).

o. As CERT officers were occupying the Great Meadow Correctional Facility, they were present in the hospital corridor when the second assault took place against claimant. They could hear him screaming in pain and for help and did nothing to assist him or stop the assault from taking place. CERT was negligent for failure to intervene in the second assault against claimant (referencing John Doe #4, John Doe #5, John Doe #6, John Doe #7, John Doe #8, John Doe #9, John Doe #10).

p. As OSI officers were occupying the Great Meadow Correctional Facility, they were present in the hospital corridor when the second assault took place against claimant. They could hear him screaming in pain and for help, and they did nothing to assist him or stop the assault from taking place. OSI was negligent for failure to intervene in the second assault against claimant (referencing Jane Doe #1 and Jane Doe #2, Jane Doe #3).

q. After Claimant was attacked twice by C.E.R.T. corrections officers, he was seen by a physicians assistant. Claimant made several complaints about injuries all over his body including but not limited to his face, head, neck, throat, ribs, hands, eyes and wrists, claimant also requested CAT-scans, MRIs, Concussion protocol, Hernia Screening and Tests for nerve damage. Claimant only received X-Rays on his facial and nasal bones but nothing further and that was only because it was documented by the R.N. that he had noticeable bruising to his face. Claimant was denied concussion protocol, CAT-Scans was administered without follow-ups for anything, and a complete body examination and now has multiple hernias. The Lead medical Nurse Administrator provider at Great Meadow Correctional Facility was negligent for their failure to provide medical attention.

r. On 6/21/22 claimant was issued two separate NYSDOCCS Tier III misbehavior reports. The first was for an assault by CERT officers that

occurred in his cell in which he was the victim yet, they charged him with infractions of Assault on staff, Violent conduct, Interference with an employee, Creating a disturbance, non Compliance with frisk procedures, and not following a Direct order. The second misbehavior report was for the infractions Not following a direct order, Unhygienic act, Violent conduct, Assault on Staff, as well as Creating a disturbance. Claimant was in the facility's Special Housing Unit (SHU), in cell F-18 and never received phone call within the first 24 hours. Claimant was confined in the SHU for a total of 24 days starting on 6/21/22. On 7/12/22 all charges on both misbehavior reports were dismissed yet claimant was not released from the SHU until 7/14/22, two days later. He was placed in SHU based on the misbehavior report where the reporting officer stated that claimant assaulted the CERT officers and even admitted in the report "...Body holds, strikes, OC spray, and mechanical restraints were used...". Great Meadow Correction Facility Superintendent was negligent for unlawful confinement of Claimant for 24 days.

## VIII.  Prayer of Relief

43.    Plaintiff request an order declaring that the defendants have acted in violation of the United States Constitution.

44.    Plaintiff requests $12, 000, 000. 00 as compensatory damages.

45. Plaintiff requests $8,000,000.00 as punitive damages.

Signed this ___3___ day of _February_ 2023        JAMES D. HILTON

I declare under the penalty of perjury that the forgoing is true and correct.

February, 3rd, 2023

DATE                                James D. Hilton 16A4943

14