**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JAMES D. HILTON,

                                    Plaintiff,

        v.

JUSTIN MAHAN,[1] et al.,                        No. 9:23-CV-00209
                                                (MAD/CFH)
                                    Defendants.


_____

**APPEARANCES:**                                **OF COUNSEL:**

JAMES D. HILTON
16-A-4943
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821
Plaintiff pro se

Attorney General for the                        OLIVIA R. COX, ESQ.
State of New York                               Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

        Plaintiff pro se James D. Hilton ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York State Department of Corrections and Community

---

[1] The Court terminated the lead defendant following section 1915 review of plaintiff's complaint.  See Dkt. No. 7 at 11-12.  Accordingly, the Clerk is respectfully directed to amend the caption to reflect Justin Mahan, the next named still-remaining defendant, as the lead defendant.
[2]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Correctional Officer ("C.O.") Justin Mahan, C.O. Andrew McDonald, Sergeant ("Sgt.") Bryan Mason, C.O. Matthew LaFountain, and C.O. Eugene Raimo, Jr. (collectively, "defendants"), violated his constitutional rights under the Eighth Amendment.  See Dkt. No. 1 ("Compl.").  Presently before the Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 14.  Plaintiff opposed, and defendants replied.  See Dkt. Nos. 22, 25, 27.  Also pending is plaintiff's request for perjury charges, as well as his motion to amend his complaint.  See Dkt. Nos. 41, 43. Defendants opposed the motion to amend.  See Dkt. No. 48.  For the following reasons, it is recommended that defendants' motion be denied, plaintiff's request for perjury charges be denied, and plaintiff's motion to amend be granted in part and denied in part.

## I. Background

At all relevant times, plaintiff was an inmate confined at Great Meadow Correctional Facility ("Great Meadow C.F.").  See Compl. at 1, 10-14.[3]

### A. Plaintiff's Factual Assertions

Plaintiff alleges that, between June 20, 2022, and June 28, 2022, a lockdown occurred at Great Meadow C.F.  See Compl. at 10.  During that time, Deputy Superintendent of Security Armand S. Caringi ordered the DOCCS Community Emergency Response Team ("CERT") to search the facility.  See id.  Members of the

---

[3] Citations are to the pagination generated by CM/ECF, located in the header of each page.

New York State Hostage Response Team ("HRT") and agents associated with the

Office of Special Investigations ("OSI") also assisted with the search.  See id. at 10-12.

On June 21, 2022, Mahan, McDonald, and three unidentified officers (identified as

John Doe #1, John Doe #2, and John Doe #3) "entered [plaintiff's cell and began to

assault him."  Compl. at 10.  These five officers "slammed [plaintiff] against the cell

wall[,] held [him down], choked, punched, kicked, elbowed, [and] kneed [him]."  Id. at 11.

The officers "struck [plaintiff] in the face, the back of [his] head, the ribs, the abdomen,

[and] the groin area."  Id.  The officers also restrained plaintiff's left wrist and twisted the

restraint, "caus[ing] deep cuts into the wrist area."  Id.  Mahan then "slammed [plaintiff]

onto [the] bed and drove his knee into [plaintiff]'s left temple, which he left in position,

pinning [plaintiff]'s head to the metal of his bed frame," and as a result, plaintiff was

unable to breathe and "began [to] los[e] consciousness."  Id.  While pinning plaintiff

down, Mahan pepper sprayed plaintiff multiple times "directly up the nose."  Id.

"[T]here were about 25 to 30 other CERT members and [HRT] officers . . . directly

out side [sic] of [plaintiff's] cell observing the assault . . . and listening to [plaintiff]

scream in agony and for help."  Compl. at 10.  Specifically, HRT members (referred to

as Tom Smiths #1-4) "could hear [plaintiff] scream for someone to help [him] during the

assault," but failed to intervene.  Id. at 12.  OSI officers (referred to as Jane Does #1-2)

were also "about 50 feet away," but did not attempt to intervene.  Id. at 11.  "Mason

claims to have [also] been present at the time of the assault[,]" as he filed a misbehavior

report related to this incident.  Id. at 10.

After this first assault, LaFountain "dragged [plaintiff] by the hair and cuffs . . . to the

Facility Hospital."  Compl. at 12.  As plaintiff entered the examination room, LaFountain,

Raimo, and three unidentified CERT officers "began to attack" him.  Id.  The officers

"struck [plaintiff] in the face, back of the head, chest, the sides of his ribs, solar plexus,

as well as his abdominal area, all while [plaintiff] was in hand restraints."  Id.  Plaintiff

"screamed for help," but the officers "ordered [him] to 'shut up' and then tried to render

him unconscious with front hand chokes[,] blocking his airway with an intention to crush

his windpipe."  Id.  The officers also pepper sprayed him.  See id.  The officers then

"placed a 'spit net' over [plaintiff's] head[, which] further complicat[ed] his breathing,"

and cleaned the blood off of plaintiff's face and body as well as the floors and the walls.

Id.  Other CERT (referencing John Does #4-10), HRT (referencing Tom Smiths #4-5),

and OSI officers (referencing Jane Does #1-3) "were present in the hospital corridor"

during this second assault and "could hear [plaintiff] screaming in pain and for help and

did nothing to assist him or stop the assault from taking place."  Id. at 13.

     Following the two incidents, plaintiff saw a physician's assistant and complained

"about injuries all over his body including but not limited to his face, head, neck, ribs,

hands, eyes and wrists[.]"  Compl. at 13.  The facility hospital denied plaintiff

"concussion protocol," "follow ups," and a "complete body examination."  Id.  "The Lead

medical Nurse Administrator provider at Great Meadow [C.F., C. Watkins,] was

negligent for [her] failure to provide medical attention."  Id.

     On June 21, 2022, plaintiff received two misbehavior reports.  See Compl. at 11, 13.

"The first was for an assault by CERT officers that occurred in his cell in which he was

the victim yet, they charged him with infractions of Assault on staff, Violent conduct,

Interference with an employee, Creating a disturbance, non-Compliance with frisk

procedures, and not following a Direct order."  Id. at 13-14.  "The second misbehavior

report was for the infractions Not following a direct order, Unhygienic act, Violent conduct, Assault on Staff, as well as Creating a disturbance." Id. at 14. As a result, plaintiff was" unlawful[ly]" confined to the Special Housing Unit ("SHU") for twenty-four days. Id. "[A]ll charges on both misbehavior reports were [eventually] dismissed." Id.

On June 29, 2022, plaintiff filed a grievance with the Inmate Grievance Review Committee ("IGRC"). See Compl. at 5. On August 24, 2022, plaintiff wrote a letter to the Superintendent of Great Meadow C.F., stating that he "never receiv[ed] a hearing or a reply in regards to [his] grievance." Id. On September 2, 2022, plaintiff filed a complaint to the Central Office Review Committee ("CORC") about the "IGRC not answering [his] complaint[.]" Id.

### B. Defendants' Factual Assertions[4]

"Plaintiff . . . had until July 12, 2022 to file a timely grievance with the IGRC at Great Meadow C.F." regarding the alleged June 21, 2022, incident. Dkt. No. 14-1 at 3, ¶12. However, "[p]laintiff never filed a facility-level grievance at Great Meadow C.F. relating to this incident, accordingly he never appealed this matter to CORC." Id. at 3, ¶13. "On August 24, 2022, [p]laintiff did file a separate grievance alleging that he had attempted to file a grievance dated June 29, 2022 related to the allegations in this lawsuit, but that he allegedly had not received a response." Id. at 3, ¶14. "This separate grievance was deemed untimely and returned, as it was received long past the 21-day and 45-day deadlines set forth in Directive 4040." Id. On October 7, 2022, plaintiff "file[d] a separate grievance in which he complain[ed] of the denial of the August 24, 2022 grievance due to timeliness." Id. at 3, ¶16. "Although he appealed his October 7, 2022

---

[4] In support of their motion, defendants filed a Statement of Material Facts. See Dkt. No. 14-1.

grievance denial to CORC, he failed to properly appeal the underlying grievance he had allegedly written on June 29, 2022." Id.

### C. Procedural History

Plaintiff commenced this action on February 3, 2023.  See Compl. at 14.  Upon section 1915 review of his complaint, the Court determined that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Mahan, McDonald, Mason, LaFountain, Ramos, John Does #1-3 survived sua sponte review, and ordered defendants to respond.[5]  See Dkt. No. 7 at 9.  On May 24, 2023, defendants filed a motion for summary judgment in lieu of an answer, arguing that plaintiff failed to exhaust his administrative remedies.  See Dkt. No. 14.  Plaintiff opposed, and then filed an amended response, and defendants replied.  See Dkt. Nos. 22, 25, 27.  On October 30, 2023, plaintiff filed a letter requesting that perjury charges be brought against Alexandria Cutler, the Inmate Grievance Program ("IGP") Supervisor at Great Meadow C.F.  See Dkt. No. 41.  On December 8, 2023, plaintiff also filed a motion to amend his complaint, as well as a Valentin request.[6]  See Dkt. No. 43; see also Dkt. No. 43-1 ("Prop. Am. Compl.").  On February 7, 2024, defendants filed their opposition to plaintiff's motion to amend.  See Dkt. No. 48.

---

[5] The Court further determined that plaintiff failed to state a claim upon which relief may be granted for: (1) Eighth Amendment failure-to-intervene claims against Caringi, John Does #4-10, Jane Does #1-2, and Tom Smiths #1-4; (2) Eighth Amendment medical indifference claims against Watkins; and (3) Fourteenth Amendment Due Process claims regarding his unlawful confinement in the SHU.  See Dkt. No. 7 at 9-13. The Court dismissed those claims without prejudice.  See id. at 14.
[6] With his motion to amend, plaintiff submits two documents titled "Notice of Motion" and "Affidavit in Support of Dinkins Motion."  Dkt. No. 43 at 3, 5.  The Court will construe plaintiff's submission as a Valentin request.  See Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997) (holding that a pro se litigant is entitled to assistance from the district court in identifying a defendant); see also discussion infra Subsection IV.C.4.

## II. Defendants' Motion for Summary Judgment

Defendants contend that they are entitled to summary judgment because "plaintiff failed to exhaust his administrative remedies before commencing this action[.]" Dkt. No. 14-10 at 5. Plaintiff maintains that he exhausted his administrative remedies. See Compl. at 4-6; see also Dkt. No. 25 at 52, 62.

### A. Legal Standard Governing Motions for Summary Judgment

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party cannot rely on "mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).  As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]"  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration.  See 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement

applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See id. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated." Adams v. Annucci, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); see Jones v. Bock, 549 U.S. 199, 218 (2007) (explaining that the applicable procedural rules "are defined not by the PLRA, but by the prison grievance process itself").

"Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). A defendant satisfies this burden by "establishing . . . that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (citing Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003), and Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999)). "However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." Coleman v. Nolan, No. 9:15-CV-40 (ATB),

2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).[7]

Here, there is no genuine dispute that, at all relevant times, DOCCS had in place a three-step inmate grievance program. See N.Y. COMP. CODES R. & REGS. tit. 7 ("7 N.Y.C.R.R."), § 701.5. First, the inmate must file a complaint with the IGRC within twenty-one calendar days of the alleged incident. See id. § 701.5(a). Second, the inmate may appeal IGRC's decision to the facility's Superintendent. See id. § 701.5(c)(1). Third, the inmate may appeal the Superintendent's decision to the CORC. See id. § 701.5(d)(1)(i). "There is also an expedited procedure for complaints raising bona fide issues of harassment or other misconduct by DOCCS staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision." Ferguson v. Mason, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021) (citing 7 N.Y.C.R.R. § 701.8), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

### 1. Whether Plaintiff Exhausted His Administrative Remedies

Defendants argue that this action should be dismissed because plaintiff failed to exhaust administrative remedies available to him. See Dkt. No. 14-10 at 8-9. Specifically, defendants contend that "[p]laintiff never filed a timely grievance in relation to [his] allegations." Id. at 8. Defendants acknowledge that "[p]laintiff filed a separate grievance [on August 24, 2022,] alleging that he attempted to file a grievance dated June 29, 2022 related to the allegations in this lawsuit, but . . . he allegedly had not

---

[7] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

received a response." Id.  Defendants assert that "this separate [August 24, 2022] grievance was deemed untimely and returned to [p]laintiff, as it was received past the 21-day and 45-day deadlines set forth in Directive 4040." Id.  Defendants note that "[h]ad [p]laintiff truly filed, or attempted to file, a grievance on June 29, 2022 related to the June 21, 2022 allegations, a Superintendent's response would [have] been due on or before July 24, 2022." Id.  Defendants argue that "[a]fter that date, had [p]laintiff not receive a response, he would be obligated to appeal the non-response to CORC to properly exhaust his administrative remedies," yet "[p]laintiff filed no such appeal." Id. at 8-9.

Defendants have submitted sworn declarations from Alexandria Cutler, the IGP Supervisor at Great Meadow C.F., and Rachel Seguin, the Director of the IGP for DOCCS.  See Dkt. Nos. 14-3, 14-5.  In her declaration, Cutler explains that she "conducted a diligent search of DOCCS records for any grievances filed by [p]laintiff," which revealed that "[p]laintiff never filed a facility-level grievance at Great Meadow C.F. relating to the June 21, 2022 incident[.]"[8] Dkt. No. 14-5 at 4-5, ¶¶16-17.  Cutler acknowledges that plaintiff filed separate grievances on August 24, 2022, and October 7, 2022, but these were denied as untimely.  See id. at 5, ¶¶19, 21; see also Dkt. Nos. 14-8, 14-9.  Moreover, Seguin declares that, pursuant to her review of the relevant DOCCS records, "[p]laintiff has appealed three facility-level grievance determinations to CORC while incarcerated in DOCCS custody . . . [but n]one of these three appealed

---

[8] A copy of the computer print-out listing this information is attached to Cutler's declaration.  See Dkt. No. 14-7 at 2-3.

facility-level grievance determinations are against [d]efendants[.]"[9]  Dkt. No. 14-3 at 4, ¶13.

Plaintiff alleges that he fully exhausted his remedies because he filed a grievance related to the alleged June 21, 2022, incident on June 29, 2022.  See Compl. at 5. Plaintiff specifically contends that he submitted the grievance, "while being housed in the [SHU]," "to the officer in charge of disbursing any and all correspondence to their designated destinations," but he never received a response.  Dkt. No. 22 at 15, ¶13. Plaintiff argues that "IGRC never responded to [his] original grievance," so he did not "have to file an appeal."  Id. at 17, ¶¶16-17.  However, plaintiff's contentions are misguided.  To satisfy the PLRA's exhaustion requirement, "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including [the] CORC[.]"  Murray v. Palmer, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010); see also 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step.").  Accepting as true, for purposes of this motion, that plaintiff timely filed a complaint with the IGRC regarding his claims set forth in this action, he still failed to timely file an appeal of this grievance with the CORC when he failed to receive a response.  See Compl. at 5-6; see also Dkt. No. 22 at 15-17.  Without filing such an appeal, plaintiff has not satisfied the PLRA's exhaustion requirements. See Woodford v. Ngo, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines[.]"); see also Petit v. Bender, No. 99-CV-0969 (SHS), 2003 WL 22743485, at *5 (S.D.N.Y. Nov. 19, 2003) ("Courts in this jurisdiction

---

[9] A copy of the computer print-out listing this information is attached to Seguin's declaration.  See Dkt. No. 14-4 at 2-3.

have regularly held that failure to timely file an appeal during the administrative grievance process, followed by a subsequent denial of access by CORC due to untimeliness, will not constitute exhaustion.") (collecting cases).

Thus, defendants have met their burden of demonstrating that a grievance procedure existed, and that plaintiff failed to exhaust administrative remedies related to the June 21, 2022, incident. As a result, the undersigned must assess whether administrative remedies were available to plaintiff.

### 2. Availability as to Plaintiff

"[T]he PLRA requires 'proper exhaustion,' which '"means using all steps that the agency holds out, and doing so properly[.]'" Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford, 548 U.S. at 90, and Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). The PLRA's "exhaustion requirement hinges on the 'availability' of administrative remedies[.]" Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets omitted). "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Id. Availability means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Id. (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

There are "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next,

an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Plaintiff claims that he submitted a grievance related to the June 21, 2022, incident "to the officer [in the SHU] in charge of disbursing any and all correspondence to their designated designations," on June 29, 2022. Dkt No. 22 at 15, ¶13. Defendants argue, however, that "[p]laintiff never filed a timely grievance in relation to [his] allegations." Dkt. No. 14-10 at 8. Specifically, defendants contend they never received the June 29, 2022, grievance, until plaintiff attached it to a separate grievance that he filed on August 24, 2022. See id.; see also Dkt. No. 14-8 at 3-7.

Before the Court is "a clash of sworn statements" where "[p]laintiff attested that he gave his grievance to a correction officer, . . . and [defendants] submitted sworn statements from inmate grievance program supervisors indicating that a review of their records revealed that no grievance was filed." Hudson v. Kirkey, No. 20-CV-581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021). "To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because the Court is prohibited from making credibility determinations." Id. (citing McLean v. LaClair, No. 19-CV-1227 (LEK/ATB), 2021 WL 671650, at *6 (N.D.N.Y. Feb. 22, 2021)); see Baltas v. Erfe, No. 3:19-CV-1820 (MPS), 2022 WL 4260672, at *10 (D. Conn. Sept. 15, 2022) (declining to render credibility determination for exhaustion issue on a motion for summary judgment); see also Carter v. Revine, No. 3:14-CV-01553 (VLB), 2017 WL 2111594, at *11 (D. Conn. May 15,

2017) ("The Court cannot render summary judgment for the [d]efendants on the basis of their contention that [the plaintiff] did not file grievances when [the plaintiff] claims that he did. These conflicting factual scenarios create the classic genuine issue of material fact.").

However, given that the Court "must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," it is not clear that plaintiff's statement and defendants' sworn statements are in fact contradictory.  Torcivia v. Suffolk Cnty., New York, 17 F.4th 342, 355 (2d Cir. 2021); see Jenkins v. Officer S, No. 19-CV-10728 (KMK), 2023 WL 6259667, at *7 (S.D.N.Y. Sept. 26, 2023).  Indeed, "the Court must infer that [plaintiff's] grievance was never filed because prison authorities did not file it, not because [p]laintiff did not attempt to submit it." Hudson, 2021 WL 1966721, at *4 (citations omitted); see McLean, 2021 WL 671650, at *8 ("[T]here is no necessary inconsistency between [the p]laintiff's claim that he mailed the appeals and [the d]efendants' claim that they were never filed; and the Court must grant [the p]laintiff the favorable inference that his grievance was sent and received, but not filed, for reasons out of his control.").

The Second Circuit has held that when a grievance goes unfiled and unanswered, "the process to appeal . . . is prohibitively opaque, such that no inmate could actually make use of it."  Williams v. Correction Officer Priatno, 829 F.3d 118, 126 (2d Cir. 2016).  In Williams, the plaintiff, responding to the defendants' claim that the plaintiff did not exhaust, contended that he attempted to file a grievance while he was in the SHU but that the correction officer he gave it to "never filed it for him."  Id. at 121.  The Court

15

accepted the plaintiff's allegation,[10] and held that, "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies.  On their face, the regulations only contemplate appeals of grievances that were actually filed."  Id. at 124-25 (noting, in detail, the confusing nature of the timelines set forth in the DOCCS' regulations governing the grievance procedure).  As such, the Second Circuit held that "the grievance procedures that were technically available to [the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.'"  Id. at 126 (quoting Ross, 578 U.S. at 643-44).

"Following Williams, this Court has denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU."  Stephanski v. Allen, No. 9:18-CV-76 (BKS/CFH), 2020 WL 806331, at *8 (N.D.N.Y. Jan. 22, 2020) (citing Juarbe v. Carnegie, No. 9:15-CV-01485 (MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016)), report and recommendation adopted, 2020 WL 777268 (N.D.N.Y. Feb. 18, 2020).  This Court has also denied summary judgment where a plaintiff "does not have a copy of the grievance, was not confined in the SHU, and has not submitted any contemporaneous correspondence inquiring about the status of his grievance," but submitted a sworn response and testified under oath "that he submitted a handwritten grievance" and that "he verbally followed up with the [ ] grievance office."  Maldonado v. Mandalaywala, No. 9:17-CV-1303 (BKS/TWD), 2020 WL 1159426, at *17 (N.D.N.Y. Feb. 12, 2020), report and recommendation adopted, 2020 WL 1157643 (N.D.N.Y. Mar. 10, 2020); cf. Khudan v. Lee, No. 12-CV-8147 (RJS),

---

[10] "The plaintiff supported [his] allegation [of unavailability] by providing the court with the date he filed the grievance, the procedure for how he filed it, and the timeline for roughly when [ ] subsequent follow-up conversations occurred."  Ozzborn v. Cornell, No. 9:17-CV-1039 (MAD/ATB), 2021 WL 2227829, at *4 (N.D.N.Y. June 2, 2021) (citing Williams, 829 F.3d at 121).

2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (granting summary judgment where, although the plaintiff asserted that he sent an appeal of his grievance to "Albany," he "fail[ed] to specify where in Albany he sent his grievance and fail[ed] to provide any other details, including the approximate date he submitted his appeal").

Plaintiff contends that he timely submitted a handwritten grievance to the officer in the SHU; yet, defendants "cit[e] records that show [plaintiff] never filed [a timely grievance or] an appeal." Williams, 829 F.3d at 121; see Dkt. No. 14-10 at 8-9. Plaintiff specified that he was in the SHU when he submitted his grievance, and provides other details relevant to his claim, including who he filed the grievance with and when he filed it. See Dkt. No. 22 at 15-17; cf. Heyliger v. Gebler, No. 06-CV-6220 (FPG), 2014 WL 4923140, at *3 (W.D.N.Y. Sept. 30, 2014) (granting the defendant's motion for summary judgment where the plaintiff alleged that his "original grievance was discarded by prison officials," yet the plaintiff "never described or named the individual who allegedly took this action"), aff'd, 624 F. App'x 780 (2d Cir. 2015) (summary order).

"[C]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." Scott v. Kastner-Smith, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) (citations and internal quotation marks omitted); see, e.g., Engles v. Jones, No. 6:13-CV-6461 (EAW), 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) ("[The p]laintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact."). However, "those cases were either not decided in the context of a motion for summary judgment filed in lieu of an answer or involved allegations far more general than those at issue here." Murray v. Noeth, No. 6:19-CV-

6342 (EAW), 2022 WL 4467691, at *5 (W.D.N.Y. Sept. 26, 2022).  "[A]t this stage of the proceedings and with no discovery having been conducted, it would not be appropriate to resolve this issue just based on the papers."  Id.; see Thaxton v. Simmons, No. 10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [the p]laintiff never filed his initial grievance . . . as [the d]efendants claim, or that, as [the p]laintiff claims, he filed a timely grievance that was lost or tampered with by [the d]efendants. Such credibility assessments are to be resolved by a trier of fact.").

As such, it is recommended that the Court deny defendants' motion for summary judgment and "hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present" to determine whether plaintiff exhausted his administrative remedies or if the administrative remedies were unavailable.  Hudson, 2021 WL 1966721, at *4; see also Tillman v. Phillips, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at *9 (N.D.N.Y. Nov. 10, 2021), report and recommendation adopted, 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021).  It is further recommended that the motion for summary judgment be denied without prejudice and with leave to renew upon completion of the exhaustion hearing.

### III. Plaintiff's Request for Perjury Charges

Plaintiff has submitted a letter "to inform [the Court] that . . . Cutler . . . has perjured herself before this court," and to "request[ ] that [the Court] recommend charge(s) of perjury against her[.]"  Dkt. No. 41 at 1.  Plaintiff argues that Cutler committed the "crime of perjury" in her declaration that is attached to defendants' motion for summary

judgment by falsely stating that "[p]laintiff never filed a facility-level grievance at Great Meadow C.F. relating to the June 21, 2022 incident at Great Meadow C.F." Id. (citing Dkt. No. 14-5 at 5, ¶17). Plaintiff asserts that he "did[,] in fact[,] file numerous grievances with the IGP 'relating to the June, 21, 2022 incident at Great Meadow C.F.'"; specifically he filed a grievance on June 29, 2022, and when he did not receive a response, he filed an appeal with the Superintendent of Great Meadow C.F., Dennis W. Bradford, on August 24, 2022. Id. at 2.

"[A] private citizen does not have a constitutional right to initiate or to compel the initiation of criminal proceedings against another individual." McCrary v. Cnty. of Nassau, 493 F. Supp. 2d 581, 591 (E.D.N.Y. 2007) (citing Leeke v. Timmerman, 454 U.S. 83, 85-87 (1981) (explaining that prisoners lack standing to seek the issuance of an arrest warrant), Linda R .S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."), and Ostrowski v. Mehltretter, 20 F. App'x 87, 91 (2d Cir. 2001) (summary order)); see Annis v. Vermont Prosecutors, 568 F. App'x 9, 10 (2d Cir. 2014) (summary order). "The decision to commence a criminal prosecution by filing an accusatory instrument is a matter of prosecutorial discretion." Lis v. Leahy, No. 90-CV-834E, 1991 WL 99060, at *1 (W.D.N.Y. June 3, 1991); see United States v. Batchelder, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring . . . are decisions that generally rest in the prosecutor's discretion"). Such decision is not generally subject to judicial review. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 383 (2d Cir. 1973). Consequently, it is recommended that plaintiff's request that criminal charges be initiated against Cutler be denied.

Moreover, as relevant here, "there is no private right of action for perjury or suborning perjury under New York law." Phillips v. Delaney, No. 19-CV-5113 (NSR), 2020 WL 5898972, at *7 (S.D.N.Y. Oct. 2, 2020) (citing Minus v. Spillane, No. 17-CV-4623 (JMF), 2019 WL 6498258, at *4 (S.D.N.Y. Dec. 3, 2019) (dismissing claim sounding in perjury because there is no private right of action for perjury under New York law), Carvel v. Ross, No. 09-CV-0722 (LAK/JCF), 2011 WL 856283, at *12 (S.D.N.Y. Feb. 16, 2011), Abrahams v. Inc. Village of Hempstead, No. 08-CV-02584 (SJF/WDW), 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009), and Sash v. City of New York, No. 05-CV-1544 (DAB/JCF), 2006 WL 2474874, *6 n.5 (S.D.N.Y. Aug. 11, 2006) ("[P]erjury and subornation of perjury . . . are not cognizable civil claims under either New York State or federal law.")); see Shaw v. Neece, 727 F.2d 947, 949 (10th Cir. 1984) ("[A] plaintiff cannot recover civil damages for an alleged violation of a criminal statute.").  Thus, insofar as plaintiff asserts a civil claim for perjury, or initiates a criminal charge through this request, it is recommended that such claim be dismissed.

### IV. Plaintiff's Motion to Amend

Plaintiff moves to amend his original complaint.  See Dkt. No. 43; see also Prop. Am. Compl.  Defendants argue that plaintiff's motion "should be denied in its entirety[,]" because (1) plaintiff failed to comply with the N.D.N.Y. Local Rules, and (2) plaintiff "fail[ed] to assert any new facts relative to the incident and attempts to bring claims that are facially defective, rendering [his] Motion to Amend futile."  Dkt. No. 48 at 2.

### A. Legal Standards Governing Motions to Amend

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires." FED. R. CIV. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." Williams v. Citigroup Inc., 659 F. 3d 208, 212-13 (2d Cir. 2011) (citation omitted). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008); see Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) (explaining that leave to amend should generally be granted "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility"). "The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion." Tafari v. McCarthy, 714 F. Supp. 2d 317, 385 (N.D.N.Y. 2010) (citation omitted).

"Where a proposed amendment seeks to add new defendants, Rules 20 and 21 also apply."[11] Mrani v. New York State DOCCS, No. 21-CV-1072 (NSR/AEK), 2023 WL 3736781, at *3 (S.D.N.Y. May 31, 2023). Under Rule 20, defendants may be joined if the claims against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants

---

[11] Rule 15(c)(1) applies when a plaintiff seeks to amend a complaint, including to add a new defendant, after the expiration of the limitations period. See FED. R. CIV. P. 15(c)(1). "Th[e Second] Circuit has interpreted the rule to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). However, because the statute of limitations is not implicated in this case, Rule 15(c)'s relation-back principles do not apply.

will arise in the action." Fᴇᴅ. R. Cɪᴠ. P. 20(a)(2); see also Fᴇᴅ. R. Cɪᴠ. P. 21 ("[T]he court

may at any time, on just terms, add or drop a party."). Where the time to join additional

parties has expired, "a motion to join additional parties is subject to the 'good cause'

requirement of Rule 16(d)." Kleeberg v. Eber, 331 F.R.D. 302, 315 (S.D.N.Y. 2019).

"Courts regularly deny motions to amend where the moving party seeks to add claims

involving collateral matters, based on different factual allegations and distinct legal

theories, from the claims already at issue in a case." Amusement Indus., Inc. v. Stern,

No. 07-CV-11586 (LAK), 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 11, 2014).

**B. Summary of the Proposed Amended Complaint**

Plaintiff's proposed amended complaint generally asserts the same facts and

circumstances as those included in his original complaint[12] except that plaintiff has

removed some of the allegations concerning the previously-dismissed claims and

terminated defendants, added allegations to support new claims, and added new

defendants. See Prop. Am. Compl. Plaintiff specifically proposes the following

individuals and entities to be added as defendants in this action: the State of New York,

DOCCS, Dennis W. Bradford, Armand S. Caringi, Eugene Raimo, Jr., Alexandra Cutler,

and John Does #1-20.[13] See id. at 2-3, 22-23; see also Dkt. No. 43 at 6-9. The

following facts are alleged in the amended complaint.

---

[12] Plaintiff realleges his original claims that were not dismissed.
[13] In his Valentin request, plaintiff notes that "John Doe #1" is "possibly" Justin Mahan, "John Doe #3" is "possibly" Andrew McDonald, "John Doe #4" is "possibly" M.J. LaFrance, "John Doe #5" is "possibly Bryan Mason, and "John Doe #6" is "possibly" Matthew LaFountain. Dkt. No. 43 at 6-7. These parties, with the exception of M.J. LaFrance, were all named in plaintiff's original complaint. See Compl. at 1-2. It is unclear to the Court why the Valentin motion indicates these parties are "possibly" operating under the "John Doe" moniker in plaintiff's proposed amended complaint. The Court will refer to "John Doe #1" as Mahan, "John Doe #3" as McDonald, "John Doe #4" as LaFrance, "John Doe #5" as Mason, and "John Doe #6" as LaFountain.

"On June 19, 2022, which was . . . the newly instituted Federal Holiday Juneteenth (commemorating the freedom of slaves)[,] . . . a violent incident broke out" in the recreation yard at Great Meadow C.F. "between a number of African American inmates and some white [ ] Corrections Officers[.]"  Prop. Am. Compl. at 3, ¶8.  "Immediately after the incident in the yard[, Great Meadow C.F.] was put on 'lock down[.]'"  Id. at 4, ¶14.  On June 21, 2022, CERT, HRT, and OSI officers "carried out" an "operation" in "[p]laintiff's housing area."  Id.  "[S]hortly before the search of his cell," plaintiff heard the officers say to each other "yeah, we're looking for a white guy . . . we gotta beat up a white guy."  Id. at 4, ¶17.  On plaintiff's "information and belief, these officers were targeting a 'white guy' for a beating, in order to counter any claims that the [search] operation being carried out was racially motivated against African-Americans as retaliation for the aforementioned incident in the [recreation] yard."  Id. at 4, ¶18.  "[A] group of approximately ten (10) CERT officers formed in a tight group of concentrated force directly outside [p]laintiff's cell while plaintiff was sitting on his bed."  Id. at 4-5, ¶19.  "[T]here were [also] approximately four (4) HRT officers and approximately three (3) OSI officers present in the near vicinity[.]"  Id. at 5, ¶20.

McDonald targeted plaintiff, "signal[ed] to the other officers[,] point[ed] towards plaintiff's cell[, and said] 'this is the guy.'"  Prop. Am. Compl. at 5, ¶23.  Plaintiff was then attacked by five officers, including Mahan, John Doe #2, McDonald, LaFrance, and Mason, "[i]n what can only be termed a wanton criminal gang assault[.]"  Id. at 6-10.  "[McDonald], in concert with [Mahan, John Doe #2, LaFrance, and Mason], manhandled [p]laintiff . . . and slammed him bodily, with great force[.]"  Id. at 6, ¶32.  The five officers

> individually and collectively, and with such depravity as to be shocking to
> the conscious, repeatedly beat, with closed fists, [p]laintiff in the face, beat

him on the head, beat his torso, and beat his arms and legs, and further kicked [p]laintiff's legs with combat boots, causing severe pain and deep contusions to [p]laintiff's head, orbits, eye tissue, maxilla, nose, jaw, mouth, legs, knees, feet, torso (ribs: front, side, and back), and deep lacerations to the lingual side of [p]laintiff's lips, all while [p]laintiff was already subdued and in the grip of the [officers].

Id. at 7, ¶34.  "The beating of [p]laintiff while he was handcuffed, completely subdued and utterly defenseless, went on for over five (5) minutes."  Id. at 9, ¶47.

"During the entirety of the gang assault . . . [p]laintiff was screaming at the top of his lungs . . . in hopes that [LaFountain and John Does #7-10], the CERT officers who remained outside of the cell during the attack[,] . . . and who could easily see [p]laintiff's constitutional rights being violated . . . and who could easily hear [his] cries for help, would come and intervene and stop the brutal assault on him."  Prop. Am. Compl. at 10, at ¶48.  The HRT officers—John Does #14-18—and the OSI officers—John Does #11-13— "in close vicinity to [p]laintiff's cell, such that they could easily hear [his] cries for help, also failed to intervene[.]"  Id. at 10, ¶¶50-51.

Following this incident, Mahan, McDonald, and John Doe #19 "individually and collectively filed a misbehavior report against [p]laintiff in which they deliberately falsified the facts related to the gang assault they perpetrated against [p]laintiff, claiming it was the [p]laintiff that attacked the [d]efendants."  Prop. Am. Compl. at 10, ¶54.  "This misbehavior report and the falsified facts contained therein were manufactured by [Mahan, McDonald, and John Doe #19], for the express purpose of protecting themselves and one another from culpability and accountability for the violent beating[.]"  Id. at 11, ¶55.  "At adjudication of this misbehavior report it was determined that the claims made therein . . . were not credible, and were without merit, and the misbehavior

report was, on summary judgment, dismissed . . . in its entirety without prejudice."  Id. at 11, ¶56.

    After this first attack, Mahan "physically removed plaintiff from the cell and handed him off to" LaFountain.  Prop. Am. Compl. at 12, ¶61.  LaFountain, along with John Does #7-10, "escorted [p]laintiff . . . to the facility hospital."  Id. at 12, ¶62.  Upon plaintiff's entrance to the hospital, Raimo led plaintiff, LaFountain, and John Does #7-10, into an examination room.  See id. at 12, ¶63.  One of the officers[14] closed the door to the examination room, "and by this affirmative action, prevented any medical service providers from entering the room to attend to [p]laintiff's serious injuries, demonstrating blatant deliberate indifference to [his] serious medical needs."  Id.  Raimo, LaFountain, and John Does #7-10 proceeded to "viciously beat the already seriously injured [p]laintiff."  Id. at 12, ¶65.  Specifically, "Raimo attempted to kill [p]laintiff by grabbing [his] throat and squeezing his wind pipe . . . while he punched, with a closed fist and with great force, repeatedly, [p]laintiff's solar-plexus."  Id. at 12, ¶65.  LaFountain and John Does #7-10, "individually and collectively, threw [p]laintiff on the floor and while [p]laintiff had his hands cuffed behind his back, . . . beat [him] in the face, about the head, on his torso, arms and legs, with closed fists, and [ ] kicked and stomped him with combat boots[.]"  Id. at 12-13, ¶66.  During this attack, "as [p]laintiff lay on the floor," he saw John Doe #19 and John Doe #20 "each in turn look through the window of [the] examination room . . . while [p]laintiff was being beaten by" Raimo, LaFountain, and John Does #7-10.  Id. at 13, ¶69.  John Doe #19 and John Doe #20 "clearly and plainly

---

[14] Plaintiff does not specify which officer closed the door.  See Prop. Am. Compl. at 12, ¶63.

witnessed the violations of [p]laintiff's constitutional rights and failed to intervene" and instead "just walked away." Id. at 13, ¶70.

On June 29, 2022, plaintiff filed a grievance with Alexandria Cutler related to the aforementioned incidents. See Prop. Am. Compl. at 15, ¶84. However, "[t]here is an institutional work-place culture at [Great Meadow C.F.], in which employees of all ranks, whether uniformed or civilian, protect themselves, and each other, from accountability when one or more employee engages in malfeasance, unlawful conduct, or conduct that violates the constitutional rights of others." Id. at 14, ¶78. "Cutler was, and is, a member of the aforementioned culture and engaged in its customs, practices, usages, and traditions when she, deliberately and with malice of forethought, failed to assign a grievance number to [the] timely submitted grievance" and she "failed to log said grievance into the official facility grievance record keeping system[.]" Id. at 15, ¶82. Cutler intentionally made plaintiff's grievance "disappear" and "effectively thwarted [p]laintiff's rights to access to the courts and [his] rights to seek redress in the court." Id. at 15, ¶83, 87.

"[The] State of New York, Dennis W. Bradford, and Armand S. Caringi knew of the danger [posed] to [p]laintiff[, yet] failed to take action to prevent the unlawful and unconstitutional acts committed against [p]laintiff[.]" Prop. Am. Compl. at 11, ¶57. Specifically, "Dennis W. Bradford and Armand S. Caringi personally caused [plaintiff] injuries by being deliberately or consciously indifferent to the rights of others in failing to properly recruit, screen, hire, supervise, and train their subordinate employees[,]" which "were the proximate cause of the constitutional injuries suffered by [p]laintiff[.]" Id. at 11, ¶¶58-59; see also id. at 14, ¶¶76-77. The State of New York "engaged in a policy,

custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of [plaintiff]'s rights[.]"  Id. at 23, ¶125.  Additionally, DOCCS "customs, policies, usages, practices, procedures and rules" led to the violation of plaintiff's rights.  Id. at 23, ¶124.

In addition to realleging his Eighth Amendment excessive force and failure-to-intervene claims that survived section 1915 review his original complaint, plaintiff asserts that his Fourth,[15] Fifth,[16] Sixth,[17]  Eighth, and Fourteenth[18] Amendment rights were violated by the State of New York, DOCCS, Bradford, Caringi, Raimo, Cutler,

---

[15] Plaintiff specifically asserts that defendants violated his Fourth Amendment rights "not to be subject to illegal search and seizure through the use of excessive force" and the "fail[ure] to intervene."  Prop. Am. Compl. at 19, ¶100; 20, ¶110; 24, ¶136; 26, ¶146.  However, plaintiff alleges no facts to support an unlawful search and seizure claim.  See, e.g., Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.").  Moreover, as defendants point out, "post-conviction excessive force claims are analyzed under the Eighth Amendment."  Dkt. No. 48 at 2 (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)).  Accordingly, in light of special solicitude, the Court will analyze plaintiff's excessive force and failure-to-intervene claims as if brought under the Eighth Amendment.  See discussion infra Subsection IV.C.3.a.

[16] Plaintiff does not specify how his rights were violated under the Fifth Amendment, and any such claim is not apparent from plaintiff's allegations in his proposed amended complaint.  See, e.g., Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) ("The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding . . . where the answers might incriminate him in future criminal proceedings).  Thus, it is recommended that any Fifth Amendment claim be dismissed as futile.

[17] Plaintiff alleges that Cutler violated the Sixth Amendment by denying him "access to the Courts and to exercise [his] Right to redress."  Prop. Am. Compl. at 29, ¶165.  However, such a claim is guided by the First Amendment, not the Sixth.  See Bourdon v. Loughren, 386 F.3d 88, 95 (2d Cir. 2004) ("[T]he right of access to the courts is grounded not in the Sixth Amendment but in various other constitutional provisions[.]"); see, e.g., Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.").  Accordingly, the undersigned will analyze plaintiff's access to courts claim under the First Amendment.  See discussion infra Subsection IV.C.3.c.

[18] To the extent that plaintiff seeks to bring a Fourteenth Amendment claim against Raimo, Mahan, John Doe #2, McDonald, LaFrance, Mason, LaFountain, and John Does #7-20, for their "excessive use of force" and "failure to intervene," such claims will be analyzed under the Eighth Amendment.  Prop. Am. Compl. at 20, 21, 25, 27; see Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015) ("[E]xcessive force claims [that are] brought by convicted prisoners [are governed by the] Eighth Amendment's Cruel and Unusual Punishment Clause" as opposed to excessive force "claims brought by pretrial detainees[, which are governed by] the Fourteenth Amendment's Due Process Clause."); see also discussion infra Subsection IV.C.3.a.

Mahan, John Doe #2, McDonald, LaFrance, Mason, LaFountain, and John Does #7-20. <u>See</u> Prop. Am. Compl. at 18, ¶94.

## C. Analysis

### 1. N.D.N.Y. Local Rules

Defendants assert that "[p]laintiff has not complied with [the] requirements [of the Local Rules,] and his Motion to Amend should be denied." Dkt. No. 48 at 2. Specifically, defendants contend that plaintiff failed "to include a memorandum of law, a supporting affidavit, or a Notice of Motion relative to his proposed Amended Complaint" and failed "to attach an unsigned copy of the proposed amended pleading to [his] motion papers." <u>Id.</u>

N.D.N.Y. Local Rule 7.1 provides that "all motions and opposition to motions require a memorandum of law, supporting affidavit when necessary to establish and provide factual and procedural background relevant to the motion, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(b). Additionally, Local Rule 15.1 provides that "[a] party moving to amend a pleading . . . must attach an unsigned copy of the proposed amended pleading to its motion papers." N.D.N.Y. L.R. 15.1(a); <u>see also</u> <u>Haner v. Cnty. of Niagara</u>, No. 19-CV-754 (LJV/MJP), 2021 WL 958448, at *1 (W.D.N.Y. Mar. 15, 2021) ("In order to allow the court to adequately evaluate the proposed amendments, the Local Rules require the movant seeking to 'amend or supplement a pleading [to] attach an unsigned copy of the proposed amended pleading as an exhibit to the motion.'") (quoting N.D.N.Y. L.R. 15.1(a)). The Local Rules are not "empty formalities," and this Court has denied a party's motion to amend based on the party's failure to comply with Local Rule 7.1 and 15.1. <u>Kilmer v. Flocar, Inc.</u>, 212 F.R.D. 66, 69

(N.D.N.Y. 2002); see, e.g., Feliz v. Johnson, No. 9:17-CV-1294 (DNH/ATB), 2019 WL 3491232, at *3 (N.D.N.Y. Aug. 1, 2019) (denying the pro se plaintiff's motion to amend where the plaintiff failed to comply with Local Rule 7.1, "which requires a party moving to amend to attach an unsigned copy of the proposed amended pleading to its motion papers"); see also Neroni v. Zayas, No. 3:13-CV-0127 (LEK/DEP), 2014 WL 1311560, at *11-12 (N.D.N.Y. Mar. 31, 2014); Cusamano v. Sobek, 604 F. Supp. 2d 416, 426-27 & n.4 (N.D.N.Y. 2009) ("As has often been recognized by both the Supreme Court and Second Circuit, even pro se litigants must obey a district court's procedural rules.") (collecting cases).  "However, it is well-established that pro se plaintiffs are 'entitled to certain latitude[.]'"  McAdoo v. Jagiello, No. 9:10-CV-355, 2011 WL 1577236, at *2 (N.D.N.Y. Apr. 26, 2011) (quoting Jemzura v. Pub. Serv. Comm'n, 961 F. Supp. 406, 415 (N.D.N.Y. 1997), and citing Murray v. Goord, 668 F. Supp. 2d 344, 353 (N.D.N.Y. 2009)).

The undersigned recognizes that plaintiff's motion to amend does not fully comply with the Local Rules, as he "failed to include a memorandum of law, a supporting affidavit, or a Notice of Motion relative to his proposed Amended Complaint."  Dkt. No. 48 at 2 (citing Dkt. No. 43 and Prop. Am. Compl.).  Moreover, plaintiff attaches only a signed copy of his proposed amended pleading and not an unsigned copy.  See Prop. Am. Compl. at 30.  However, in light of special solicitude, and because plaintiff's failure to comply with the Local Rules did not result in any appreciable harm or prejudice to defendants, plaintiff's motion will be considered.  The Court reminds plaintiff that he must comply with the Local Rules of Practice for this Court.  See Barnes v. Annucci, No. 9:19-CV-0109 (TJM/ATB), 2019 WL 1512799, at *20 n.16 (N.D.N.Y. Apr. 8, 2019)

(accepting the pro se plaintiff's motion to amend where he failed to comply with the Local Rules, but warning "that any further requests for leave to amend his complaint must comply with . . . the Local Rules [or] will be summarily denied").

## 2. Undue Delay, Bad Faith, and Undue Prejudice

In general, "permission to amend should be freely granted."  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  However, courts may deny a party's motion for leave to amend a pleading "where the motion is made after an inordinate delay."  Id.  "When a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay."  Id. (citations omitted).  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."  State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (citations omitted).

Here, plaintiff filed his motion to amend more than ten months after he filed his original complaint.  See Compl. at 14 (filed on Feb. 3, 2023); see also Prop. Am. Compl. at 30 (filed on Dec. 8, 2023).  "Courts in this Circuit have found that similar and even longer delays are insufficient to warrant denial of leave to amend."  Nat'l Rifle Ass'n of Am. v. Cuomo, 480 F. Supp. 3d 404, 413 (N.D.N.Y. Aug. 14, 2020) (citing Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d 380, 384 (2d Cir. 1968) (holding that a three-year delay from the filing of the initial complaint was a factor to be considered but, in the absence of bad faith or prejudice to the opposing party, the delay alone was insufficient to deny relief), and Catapano v. Western Airlines, Inc., 105 F.R.D. 621, 623

(E.D.N.Y. 1985) (stating that a period of one year between the plaintiff's filing of the original complaint and the plaintiff's motion to amend is not enough to constitute undue delay)), aff'd in part, appeal dismissed in part sub nom. Nat'l Rifle Ass'n of Am. v. Hochul, No. 20-3187-CV, 2021 WL 5313713 (2d Cir. Nov. 16, 2021).  Although plaintiff did not proffer an explanation for his delay, there is no evidence of bad faith on the current record.  See generally Prop. Am. Compl.  Moreover, defendants have not asserted any undue prejudice,[19] and "the Court is unable to glean any significant or undue prejudice to defendants by the untimely filing of the proposed Amended Complaint."  Cunningham v. Lupis, No. 3:21-CV-00273 (SALM), 2022 WL 136463, at *2 (D. Conn. Jan. 14, 2022).  "Accordingly, these factors do not weigh against granting plaintiff's motion [to amend his complaint]."  Id.

### 3. Futility

"In addition to undue delay, bad faith, and undue prejudice, a court may exercise its discretion to deny a party's motion to amend a pleading when the proposed amendment would be futile."  Am. Med. Ass'n v. United Healthcare Corp., No. 00-CV-2800 (LMM), 2006 WL 3833440, at *7 (S.D.N.Y. Dec. 29, 2006) (citing Foman, 371 U.S. at 182).  An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North

---

[19] The undersigned notes that this proceeding is still in its early stages and discovery has not yet commenced; thus, there is no ascertainable prejudice to defendants if plaintiff's motion to amend is granted.  See Kirkland-Hudson v. Mount Vernon City Sch. Dist., No. 21-CV-695 (KMK), 2022 WL 1555606, at *2 (S.D.N.Y. May 16, 2022) ("Undue prejudice speaks to whether the amendment will require the opposing party to expend significant resources in discovery and whether resolution of the dispute will be delayed.") (internal quotation marks and citations omitted); see also McGrier v. Capitol Cardiology, No. 20-CV-1044 (LEK/DJS), 2021 WL 3552524, at *2 (N.D.N.Y. Aug. 11, 2021) (finding no prejudicial effect when "relatively little time and expense has been devoted to discovery, motion practice, or trial preparation").

Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)).  To avoid dismissal, the proposed amendment must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits.  See U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1254 (2d Cir. 1989).

Construed liberally, plaintiff's proposed amended complaint asserts the following claims against the following defendants: (1) Eighth Amendment excessive force claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10; (2) Eighth Amendment failure-to-intervene claims against LaFountain, and John Does #7-20; (3) Eighth Amendment medical indifference claims against Raimo, LaFountain, and John Does #7-10; (4) Fourteenth Amendment equal protection claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-20; (5) Fourteenth Amendment due process claims against Mahan, McDonald, and John Doe #19; (6) First Amendment access to courts claim against Cutler; (7) claims against the State of New York and DOCCS; and, (8) claims against Caringi and Bradford.  See Prop. Am. Compl. at 1-30.

### a. Eighth Amendment Claims

Upon section 1915 review of plaintiff's original complaint, this Court determined that plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Mahan, McDonald, Mason, Raimo, LaFountain, and John Does #1-3 survived sua

sponte review.  See Dkt. No. 7 at 14.  Plaintiff now, in his proposed amended complaint,

seeks to add more details about the alleged June 21, 2022, incidents, as well as to add

new defendants.  See generally Prop. Am. Compl.; see also Dkt. No. 43 at 6-9.

### i. Excessive Force

"The Eighth Amendment's prohibition against cruel and unusual punishment

encompasses the use of excessive force against an inmate, who must prove two

components: (1) subjectively, that the defendant acted wantonly and in bad faith, and

(2) objectively, that the defendant's actions violated 'contemporary standards of

decency.'"  Lewis v. Stanton, No. 9:13-CV-1172 (LEK/TWD), 2014 WL 12992759, at *2

(N.D.N.Y. Dec. 31, 2014) (quoting Blyden v. Mancusi, 186 F.3d 252, 262-63 (2d Cir.

1999)).  Plaintiff's excessive force allegations against Mahan, John Doe #2, McDonald,

LaFrance, Mason, Raimo, LaFountain, and John Does #7-10 are nearly identical to the

allegations set forth in the original complaint.  Compare Compl. at 10-13, with Prop. Am.

Compl. at 6-13.  To the extent that plaintiff's allegations include new defendants,

including the John Doe defendants, "these allegations are sufficiently plead and arise

out of the same set of facts and circumstances involving [p]laintiff's [original excessive

force claims], and will involve common questions of law and fact."  Zielinski v. Annucci,

No. 9:17-CV-1042 (DNH/TWD), 2019 WL 2870337, at *8 (N.D.N.Y. Mar. 19, 2019),

report and recommendation adopted, 2019 WL 2869608 (N.D.N.Y. July 3, 2019); see

FED. R. CIV. P. 20(a)(2) (permitting joinder of defendants if "any right to relief is asserted

against them . . . arising out of the same transaction, occurrence, or series of

transactions or occurrences; and any question of law or fact common to all defendants

will arise in the action).

Therefore, it is recommended that plaintiff's motion to amend be granted with respect to his Eighth Amendment excessive force claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10.

### ii. Failure to Intervene

In addition to the persons directly involved in the use of force, "[l]aw enforcement officials can be held liable under [section] 1983 for not intervening in a situation where excessive force is being used by another officer."  Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

During section 1915 review, this Court permitted plaintiff's failure-to-intervene claims against Mahan, McDonald, Mason, LaFountain, Raimo, and John Does #1-3 to continue.  See Dkt. No. 7 at 9.  However, the Court also determined that plaintiff failed to allege "facts suggesting that [some of the John Doe] defendants were personally involved in the alleged assault or that [they] had a realistic opportunity to prevent any assault."  Id. at 9-10.  The Court specifically noted that "[a]llegations that 'defendants' 'did nothing,' without specifying that any particular individual acted with deliberate indifference, do not meet pleading requirements."  Id. (citing Lawson v. Rusin, No. 08-CV-321 (JS/WDW), 2008 WL 1902218, at *2 (E.D.N.Y. Apr. 25, 2008) (explaining that "lumping all Defendants . . . together without specifying what actions were taken, and by whom, to violate his rights" was insufficient to meet pleading requirements)).

Plaintiff, in his proposed amended complaint, seeks to renew his failure-to-intervene allegations.  See Prop. Am. Compl. at 9-10, 13.  Plaintiff claims that "[d]uring the entirety of the [first] assault[,]" he "was screaming at the top of his lungs . . . in hopes that

[LaFountain and John Does #7-10] would come and intervene and stop the brutal assault on him."  Id. at 9-10, ¶48.  Plaintiff asserts that LaFountain and John Does #7-10 "remained outside of [plaintiff's] cell during the attack" and "could easily see [his] constitutional rights being violated" and "could easily hear [his] cries for help."  Id. Plaintiff further contends that John Does #11-18 were "in close vicinity to [his] cell, such that they could easily hear [his] cries for help" but they "failed to intervene[.]"  Id. at 10, ¶¶50-51.  Plaintiff additionally claims that, as he was laying on the ground during the second assault, he saw John Doe #19 and John Doe #20 "each in turn look through the window of [the] examination room . . . while [p]laintiff was being beaten by [Raimo, LaFountain, and John Does #7-10]."  Id. at 13, ¶69.  Plaintiff alleges that John Does #19-20 "clearly and plainly witnessed the violations of [his] constitutional rights and failed to intervene[; t]hey just walked away."  Id. at 13, ¶70.

Plaintiff's proposed amended complaint alleges sufficient facts to require a response from defendants LaFountain, John Does #7-10, and John Does #19-20, to plaintiff's failure-to-intervene claims against them, and it is, therefore, recommended that the motion to amend be granted in part as to these claims.  However, plaintiff alleges no facts to plausibly suggest that John Does #11-18 were actually present during the alleged use of excessive force by Mahan, John Doe #2, McDonald, LaFrance, and Mason, and "therefore there is nothing to plausibly suggest that these defendants could have intervened to stop the alleged assault."  Lewis, 2014 WL 12992759, at *3.  Plaintiff only states that, during the attack, John Does #11-13 were "the OSI officers in close vicinity to [his] cell" and John Does #14-18 were the "HRT officers also in close vicinity to [his] cell" "such that they could easily hear [his] cries for help" but failed to intervene.

35

Prop. Am. Compl. at 10, ¶50-51; see Dean v. New York City, No. 15-CV-8825 (LAK/KNF), 2017 WL 3670036, at *4 (S.D.N.Y. July 6, 2017) (denying as futile leave to amend to add failure-to-intervene claim against the defendant where the proposed amended complaint was "devoid of any factual allegations against [the defendant], such as, for example, where [the defendant] was located and what she was doing when [another correctional officer] pepper sprayed the plaintiff's face").  Plaintiff does not allege that John Does #11-18 "remained outside" his cell during the attack, but instead vaguely asserts that they were in "close vicinity."  Prop. Am. Compl. at 9-10.  Plaintiff does not define the "close vicinity" or otherwise specify how these officers were "in a position to intervene."  Id.; Gonzalez v. Waterbury Police Dept., 199 F. Supp. 3d 616, 623 (D. Conn. 2016) ("in order to proceed under a theory that the defendants . . . failed to intervene in another officer's use of excessive force, a plaintiff must establish, at a minimum, the particular defendant was in a position to intervene" and "an officer may not be held liable if there is a dearth of evidence with respect to whether the officer was in a position to intervene")); see Conroy v. Caron, 275 F. Supp. 3d 328, 354 (D. Conn. 2017) ("An officer's mere presence at the scene is not enough to establish liability for a failure to intervene.") (citing Gonzalez, 199 F. Supp. 3d at 623).  "Th[is] proposed amendment would not withstand a motion to dismiss as it contains conclusory and vague general allegations against [John Does #11-18] and is therefore futile."  Zielinski, 2019 WL 2870337, at *10.  Thus, it is recommended that plaintiff's motion to amend be denied in part regarding his failure-to-intervene claims against John Does #11-18.

### iii. Deliberate Medical Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment also establishes "the government's obligation to provide medical care for those whom it is punishing by incarceration."  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  Similar to an excessive force claim, a claim alleging that prison officials have violated this constitutional right must satisfy both objective and subjective requirements.  See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  To satisfy the objective requirement, the alleged deprivation must be "sufficiently serious."  Id.; see also Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious.").  To satisfy the subjective requirement "[i]n medical-treatment cases . . . , the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health."  Salahuddin, 467 F.3d at 280.  "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  Id.; see also Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Here, in his proposed amended complaint, plaintiff alleges that, when he, Raimo, LaFountain, and John Does #7-10 were inside the examination room, "one of these [d]efendants closed the door and by this affirmative action, prevented any medical service providers from entering the room to attend to [p]laintiff's serious injuries, demonstrating blatant deliberate indifference to [his] serious medical needs."  Prop. Am.

Compl. at 12, ¶63.  The Court acknowledges that plaintiff's proposed amended complaint generally addresses both the objective and subjective requirements for a medical indifference claim.  Cf. Smith v. Huggler, No. 9:20-CV-1435 (GTS/CFH), 2022 WL 1420848, at *3 (N.D.N.Y. May 5, 2022) (denying the plaintiff's motion to amend where his "allegations neither allege[d] that the failure to allow [him] to receive medication was sufficiently serious or that [the] defendant['s] interference amounted to deliberate indifference").  However, plaintiff does not explain how closing the door prevented him from accessing medical treatment.[20]  Nor does plaintiff explain how closing the door "needlessly prolonged" or "caused extreme pain or exacerbated" his injuries.  Ferguson v. Cai, No. 11-CV-6181 (PAE), 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.") (citing Salahuddin, 467 F.3d at 281); see Smolen v. Wesley, No. 16-CV-2417 (KMK), 2019 WL 4727311, at *8 (S.D.N.Y. Sept. 25, 2019) (dismissing the plaintiff's deliberate medical indifference claim because the plaintiff's injuries, including an arm wound, a broken finger, and general pain following an assault, did not pose a "substantial risk of serious harm" because it "d[id] not produce death, degeneration, or extreme pain") (citing Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001)).

---

[20] As this Court previously noted during section 1915 review, plaintiff was eventually treated by a physician's assistant, who ordered X-rays and CAT scans.  See Dkt. No. 7 at 6; see also Melvin v. Cnty. of Westchester, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) ("Indeed, treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference.") (internal quotation marks and citations omitted).

Moreover, plaintiff fails to specify which defendant took the "affirmative action" and "closed the door" to the examination room.  Prop. Am. Compl. at 12, ¶63.  Plaintiff also does not explain, that if one the defendants closed the door, how the rest of the defendants in the room exhibited deliberate medical indifference.  See Leneau v. Ponte, No. 16-CV-776 (GHW), 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[C]omplaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.") (internal quotation marks and citations omitted).  "[A]s with all claims under § 1983," a prisoner seeking to prove an Eighth Amendment claim for deliberate indifference to his serious medical needs "must establish the defendant's personal involvement in the alleged constitutional deprivation." Bell v. Arnone, 455 F. Supp. 2d 232, 235 (W.D.N.Y. 2006). Allegations that "one of [t]hese defendants" violated plaintiff's constitutional rights, without specifying that any particular individual acted with deliberate indifference, does not establish personal involvement and fails to meet pleading requirements.  Prop. Am. Compl. at 12, ¶63; see Burrell v. Annucci, No. 9:22-CV-0701 (GTS/ATB), 2022 WL 4618737, at *7 (N.D.N.Y. Sept. 30, 2022) (dismissing the plaintiff's medical indifference claim on section 1915 review where the plaintiff "allege[d] that [the] defendants disregarded protocols without specifying that any particular individual acted with deliberate indifference") (internal quotation marks and citations omitted); see also Taranto v. Putnam Cnty., No. 21-CV-2455 (KMK), 2023 WL 6318280, at *24 (S.D.N.Y. Sept. 28, 2023) ("It is unclear from [the p]laintiffs' pleadings which [of the d]efendants prevented [the plaintiff] from receiving proper medical attention[, as the plaintiff has] not provided a 'plausible factual basis to distinguish the conduct of each of the

defendants.'") (quoting <u>Bardwil Indus. Inc. v. Kennedy</u>, No. 19-CV-8211 (NRB), 2020 WL 2748248, at *3 (S.D.N.Y. May 27, 2020)).

Thus, it is recommended that plaintiff's motion to amend, insofar as he seeks to add Eighth Amendment medical indifference claims against Raimo, LaFountain, and John Does #7-10, be denied.

### b. Fourteenth Amendment Claims

### i. Equal Protection

The Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. AMEND. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  To state an equal protection claim, a plaintiff must allege facts showing that the plaintiff was treated differently from similarly-situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  <u>Diesel v. Town of Lewisboro</u>, 232 F.3d 92, 103 (2d Cir. 2000) (quoting <u>LeClair v. Saunders</u>, 627 F.2d 606, 609-10 (2d Cir. 1980)).  "Where a plaintiff asserting an equal protection cause of action alleges that he or she was treated differently from similarly situated individuals on the basis of race, proof of racially discriminatory animus or purpose is required."  <u>Little v. Soulia</u>, No. 9:19-CV-0263 (TJM/TWD), 2021 WL 4524220, at *19 (N.D.N.Y. June 16, 2021) (citing <u>Bussey v. Phillips</u>, 419 F. Supp. 2d 569, 581 (S.D.N.Y. 2006)), <u>report and recommendation adopted</u>, 2021 WL 4521048 (N.D.N.Y. Oct. 4, 2021).

"When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as 'similarly situated' individuals." Salaam v. Stock, No. 9:19-CV-00689 (AMN/TWD), 2023 WL 3853811, at *4 (N.D.N.Y. Feb. 27, 2023) (citing Fortress Bible Church v. Feiner, 694 F.3d 208, 222 (2d Cir. 2012), report and recommendation adopted, 2023 WL 3579770 (N.D.N.Y. May 22, 2023). "To state a valid claim under a 'class of one,' a prisoner-plaintiff must allege that: (1) he has been intentionally treated differently than other similarly situated inmates; and (2) there is no rational basis for the disparity in treatment." Morgan v. Semple, No. 3:16-CV-225 (VAB), 2020 WL 2198117, at *19 (D. Conn. May 6, 2020) (citing Holmes v. Haugen, 356 F. App'x 507, 509 (2d Cir. 2009) (summary order), and Green v. Martin, 224 F. Supp. 3d 154, 171 (D. Conn. Dec. 14, 2016)). In the Second Circuit, "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Clubside v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) (citing Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008) (per curiam)). The similarity between the plaintiff and comparators provides "'an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain.'" Witt v. Vill. of Mamaroneck, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015) (quoting Neilson, 409 F.3d at 105), aff'd, 639 F. App'x 44 (2d Cir. 2016) (summary order). Class-of-one plaintiffs must also "prove 'intentional disparate treatment,' that is, [they must] demonstrate the decisionmakers were aware that there were other similarly-situated individuals who were treated differently."

Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 143 (2d Cir. 2010) (quoting

Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001)).

Here, plaintiff claims that he was discriminated against on account of his race.  See

Prop. Am. Compl. at 3-5.  Plaintiff has alleged that McDonald targeted him—and then

Mahan, John Doe #2, McDonald, LaFrance, and Mason assaulted him—for being a

"white guy."  Id. at 4, ¶¶17-18.  Plaintiff believes that "these officers were targeting a

'white guy' for a beating, in order to counter any claims that the [search] operation being

carried out [at Great Meadow C.F.] was racially motivated against African-Americans as

retaliation for [a previous] incident in the [recreation] yard."  Id. at 4, ¶18.

Construing plaintiff's amended complaint liberally, his "equal protection claim would

need to include allegations that [plaintiff] is similarly situated to all [white inmates at

Great Meadow C.F.], but treated differently under circumstances giving rise to an

inference that he was intentionally singled out by the state actors[.]"  Gray v.

Bansley/Anthony/Burdo LLC, No. 3:19-CV-1869 (KAD), 2020 WL 292230, at *5 (D.

Conn. Jan. 21, 2020).  Even assuming the truth of plaintiff's allegations that he

overheard the officers saying to each other, "yeah, we're looking for a white guy . . . we

gotta beat up a white guy," his "complaint does not include any facts plausibly

suggesting that similarly situated prisoners were treated differently than he was."  Prop.

Am. Compl. at 4, ¶17; Thomas v. Pingotti, No. 9:17-CV-0300 (GTS/DEP), 2017 WL

3913018, at *7 (N.D.N.Y. Sept. 6, 2017).  Specifically, plaintiff "has identified and

presented evidence of no other inmates with similar [characteristics] who were treated

differently under the same circumstances."  Shakur v. Sieminski, No. 3:07-CV-1239C,

2009 WL 2151174, at *8 (D. Conn. July 15, 2009).  "Despite [plaintiff]'s conclusory

42

allegation of defendants displaying discriminatory animus against him, [plaintiff] makes no showing that defendants had purposefully treated him differently from others similarly situated inmates[.]"  Walker v. LaValley, No. 9:12-CV-807, 2014 WL 4744735, at *21 (N.D.N.Y. Sept. 23, 2014) (citing Giordano, 274 F.3d at 751); see Barkai v. Nuendorf, No. 21-CV-4060 (KMK), 2023 WL 2691712, at *30 (S.D.N.Y. Mar. 29, 2023) ("[T]he Court finds that [the p]laintiff has failed to state a[n] equal protection claim, as [the p]laintiff has not identified a single comparator to plausibly establish disparate treatment.").

"Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause."  Thomas, 2017 WL 3913018, at *7; see Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (dismissing equal protection claim because the plaintiff did "not allege that he was treated differently from any identified individuals, let alone individuals who he claims were similarly situated to him in any respect"); see also Burrell, 2022 WL 4618737, at *9 (dismissing the plaintiff's Fourteenth Amendment equal protection claim because "the complaint d[id] not contain any allegations regarding similarly situated inmates."). "Based on the foregoing, there is no basis for the Court to plausibly infer from the allegations in the [amended] complaint that defendants [targeted] plaintiff based upon his race."  Burrell, 2022 WL 4618737, at *9 (collecting cases); see Butler v. Bridgehampton Fire Dist., No. 14-CV-1429 (JS/SIL), 2015 WL 1396442, at *4-5 (E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim under the selective enforcement and class of one theories because the complaint "only discuss[ed] the harmful actions [the defendants] took with respect to

[the p]laintiff, but there [was] no discussion whatsoever of any similarities between [the p]laintiff and others").

To the extent plaintiff asserts that Raimo, LaFountain, and John Does #7-20 violated his rights under the Equal Protection clause of the Fourteenth Amendment, he has not alleged any facts which plausibly suggest that these defendants treated him differently from similarly-situated inmates.  See Prop. Am. Compl. at 25-26; see also Page v. Lantz, No. 3:03-CV-1271 (MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding that equal protection claims fail as matter of law where the plaintiff did not allege that similarly-situated inmates were treated differently under similar circumstances).  Therefore, plaintiff's Fourteenth Amendment equal protection claims as set forth in his proposed amended complaint are not cognizable.  Thus, it is recommended that this aspect of his motion to amend be denied as futile.

### ii. Due Process

The Due Process Clause of the Fourteenth Amendment "has been interpreted as a 'protection of the individual against arbitrary action of government.'"  Lombardi v. Whitman, 485 F.3d 73, 78-79 (2d Cir. 2007) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)).  "In the prison context, to establish a violation of due process, a plaintiff must demonstrate that (1) he possessed a liberty interest and (2) the defendants deprived him of that interest without sufficient process."  Ruggiero v. Fischer, 807 F. App'x 70, 73 (2d Cir. 2020) (summary order) (citing Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001)).  However, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout, 808 F.2d 949,

951 (2d Cir.1986)); see Sital v. Burgio, 592 F. Supp. 2d 355, 357 (W.D.N.Y. 2009) ("The

Second Circuit has held that the issuance of false misbehavior reports against an

inmate by corrections officers is insufficient on its own to establish a denial of due

process[.]") (citations omitted).  "An allegation that a false misbehavior report was

issued in retaliation for an inmate's alleged exercise of a constitution[al] right . . . cannot

survive if it is phrased wholly in conclusory terms that are unsupported by detailed

factual allegations."  Zielinski, 2019 WL 2870337, at *9 (citing Friedl v. City of New York,

210 F.3d 79, 85-86 (2d Cir. 2000)).

     Here, plaintiff claims that Mahan, McDonald, and John Doe #19 filed a false

misbehavior report against plaintiff in relation to the alleged incidents on June 21, 2022.

See Prop. Am. Compl. at 10-11.  However, plaintiff fails to support such claim with

"detailed factual allegations."  Zielinski, 2019 WL 2870337, at *9-10; see Sital, 592 F.

Supp. 2d at 358 (dismissing the plaintiff's due process claim where the "plaintiff [did] not

allege, nor is there any evidence, that [the] defendants issued the allegedly false reports

against him out of any retaliatory motive").  Specifically, plaintiff "failed to set forth any

facts to support the claim that [Mahan, McDonald, or John Doe #19] acted with

retaliation" in filing their misbehavior reports.  Crenshaw v. Hartman, 681 F. Supp. 2d

412, 417 (W.D.N.Y. 2010).  "The proposed amendment would not withstand a motion to

dismiss as it contains conclusory and vague general allegations against [Mahan,

McDonald, and John Doe #19] and is therefore futile."  Zielinski, 2019 WL 2870337, at

*9.  Accordingly, it is recommended that plaintiff's motion to amend his complaint to add

a due process claim against Mahan, McDonald, and John Doe #19 be denied.

**c. First Amendment Access to Courts Claim**

"In a section 1983 claim alleging a cover-up by government agents, the constitutional right at issue is the First Amendment right of access to courts[.]"  <u>Tavares v. New York City Health & Hosps. Corp.</u>, No. 13-CV-3148 (PKC/MHD), 2015 WL 158863, at *7 (S.D.N.Y. Jan. 13, 2015).  "[T]he theory is that the cover-up has made it impossible for the plaintiff to litigate an underlying claim, because material evidence was destroyed, for instance, or because the statute of limitations expired before the plaintiff discovered the cover-up."  <u>Id.</u> (citing <u>Christopher v. Harbury</u>, 536 U.S. 403, 413-14 & n.11 (2002) (describing these claims as "backward-looking access claims")).  "The Second Circuit has emphasized, however, that '[t]he viability of [such] claims is far from clear,' pointing out that the <u>Harbury</u> decision was careful not to endorse their validity."  <u>Id.</u> (citing <u>Sousa v. Marquez</u>, 702 F.3d 124, 128 (2d Cir. 2012)).

Plaintiff contends that Cutler "deliberate[ly] obstruct[ed] . . . [p]laintiff's engagement in the grievance process" regarding the alleged June 21, 2022, incident in efforts to "protect" her "fellow employees from accountability" for engaging in unconstitutional conduct.  Prop Am. Compl. at 15-16.  However, even assuming backward-looking access claims are actionable, plaintiff's fails.  "[S]uch claims are available only if a judicial remedy was 'completely foreclosed' by the alleged cover-up."  <u>Sousa</u>, 702 F.3d at 128 (quoting <u>Broudy v. Mather</u>, 460 F.3d 106, 120 (D.C. Cir. 2006)).  "Plaintiff['s] claim[ is] clearly not foreclosed as [he is] bringing them in this very Action and [has] not argued that any claims have been foreclosed—accordingly the claim is dismissed."  <u>Taranto</u>, 2023 WL 6318280, at *13 (citing <u>Tavares</u>, 2015 WL 158863, at *7-8 (dismissing "cover-up" claim when the plaintiff "has not alleged that the DOCCS [d]efendants' actions prevented him from litigating his underlying Eighth Amendment

and state-law medical malpractice claims against the City [d]efendants—indeed, he is bringing those very claims in this action.")).

To the extent plaintiff is alleging that Cutler is liable for overseeing an "unlawful[ ]" inmate grievance program, such claim also fails because "inmates have no constitutional right to file a grievance." Prop. Am. Compl. at 16; Mitchell v. New York State Dep't of Corr. Servs., No. 6:06-CV-6278 (MAT), 2012 WL 6204205, at *3 (W.D.N.Y. Dec. 12, 2012); see Tafari, 714 F. Supp. 2d at 349 ("While the First Amendment guarantees the right of access to courts, grievance programs [such as DOCCS'] were undertaken voluntarily and have no legal basis in the Constitution. Therefore these programs are not considered constitutional rights."); see also Cancel v. Goord, No. 00-CV-2042 (LMM), 2001 WL 303713, at *3-4 (S.D.N.Y. Mar. 29, 2001) ("While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, e.g., Bill Johnson's Rest., Inc. v. NLRB, [461 U.S. 731, 741 (1983)] (finding that "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"), inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under [section] 1983.") (citation omitted)); Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (finding that because "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment," claims that corrections officers failed to properly address the plaintiff's grievances by conducting a thorough investigation to the plaintiff's satisfaction must be dismissed).

Moreover, the addition of Cutler as a new defendant in this case would not be proper, as plaintiff's access to courts claim does not present a question of law or fact common to the existing claims. See Amusement Indus., Inc., 2014 WL 4460393, at *13 ("[C]ourts have recognized that the addition of [new defendants and] collateral claims in amended pleadings can easily delay resolution of the case due to the need to engage in substantial additional discovery regarding the new factual contentions.") (collecting cases). Accordingly, joinder of Cutler as a new defendant would not be proper. Therefore, it is recommended that plaintiff's motion to amend to add an access to courts claim against Cutler be denied.

### d. Claims against the State of New York and DOCCS

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. CONST. AMEND. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); see Hans v. Louisiana, 134 U.S. 1, 10-21 (1890); see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Generally speaking, "[t]he Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 193 (2d Cir. 2015); see Kentucky v. Graham, 473 U.S. 159, 169 (1985) (holding that a claim for damages against state officials in

their official capacity is considered to be a claim against the State and is, therefore, barred by the Eleventh Amendment); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); Severino v. Negron, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under section 1983] for money damages against state officials in their official capacities."). "State immunity extends not only to the states, but also to state agencies." Matagrano v. New York State Dep't of Corr. and Cmty. Supervision, No. 9:19-CV-00763 (BKS/DJS), 2020 WL 7338586, at *15 (N.D.N.Y. Dec. 14, 2020) (citations omitted).

Plaintiff claims that the State of New York "knew of the danger [posed] to [p]laintiff[, yet] failed to take action to prevent the unlawful and unconstitutional acts committed against [p]laintiff[.]" Prop. Am. Compl. at 11, ¶57. Plaintiff also contends that the State of New York and DOCCS "engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of [plaintiff]'s rights[.]"[21] Id. at 23, ¶124-25. However, a claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction. See Va. Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 252 (2011) (noting that "the Eleventh Amendment . . .

---

[21] Although plaintiff does not cite to Monell directly, his language regarding "policies" and "customs" may indicate that he seeks to bring these claims against the State of New York and DOCCS pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). That seminal case, however, is inapplicable here as the State of New York and DOCCS are not "municipalities." Id. at 690 n.54 (limiting holding "to local government units which are not considered part of the State for Eleventh Amendment purposes"). Moreover, Eleventh Amendment immunity would also bar such a claim. See generally Romaine v. New York, No. 9:21-CV-0127 (NAM/ML), 2022 WL 4236282, at *2 (N.D.N.Y. Sept. 14, 2022).

confirm[s] the structural understanding that States entered the Union with their

sovereign immunity intact, unlimited by Article III's jurisdictional grants"); see also

Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996) ("For over a century [the

Supreme Court has] reaffirmed that federal jurisdiction over suits against unconsenting

States 'was not contemplated by the Constitution when establishing the judicial power of

the United States.") (quoting Hans, 134 U.S. at 15).  Accordingly, it is recommended

that plaintiff's motion to amend his complaint to add the State of New York and DOCCS,

and any individual state officials acting in their official capacities, as new defendants be

denied as futile.

### e. Claims against Bradford and Caringi

A section 1983 claim must allege that a defendant was "personally involved in the

alleged constitutional deprivation."  Littlejohn v. City of New York, 795 F.3d 297, 314 (2d

Cir. 2015) (citing Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127

(2d Cir. 2004)).  Thus, "an individual cannot be held liable for damages under Section

1983 merely because he [or she] held a high position of authority, but can be held liable

if he [or she] was personally involved in the alleged deprivation."  Back v. Hastings on

the Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004); see also

Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("[S]upervisor liability in a

Section 1983 action depends on a showing of some personal responsibility, and cannot

rest on respondent superior . . . [s]imilarly, proof of linkage in the prison chain of

command is insufficient.").  To that end, the Second Circuit has previously held that

personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation through a

report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014).  Regardless of the basis for liability, the complaint must "allege particular facts indicating that an individual defendant was personally involved in the depravation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not suffice."  Davis v. Cnty. of Nassau, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005).

Plaintiff alleges that Bradford and Caringi "personally caused [plaintiff] injuries by being deliberately or consciously indifferent to the rights of others in failing to properly recruit, screen, hire, supervise, and train their subordinate employees[,]" which "were the proximate cause of the constitutional injuries suffered by [p]laintiff[.]"  Prop. Am. Compl. at 11, ¶¶58-59.  However, as stated upon section 1915 review of plaintiff's original complaint, his proposed amended complaint "is devoid of any allegations which plausibly suggest that Caringi [or Bradford] . . . created a policy or custom under which the assault occurred, or acted grossly negligent in supervising subordinates."  Dkt. No. 7 at 11.  Plaintiff's conclusory allegations that Bradford and Caringi maintained an unlawful hiring process and an inadequate supervision of employees do not suffice.  See, e.g., Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (holding that vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)

(concluding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement); Bridgewater v. Taylor, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (determining that conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim); White v. Fischer, No. 9:09-CV-0240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010). Because plaintiff has not pleaded that Bradford or Caringi took any individual action with respect to the alleged constitutional violations, there is no basis for liability under section 1983. It is, therefore, recommended that plaintiff's motion to amend his complaint to add claims against Bradford and Caringi be denied.

### 4. Plaintiff's Valentin Request

Plaintiff has submitted a Valentin motion, as well as an affidavit in support of his Valentin motion, requesting that this Court "assist [him] with the identification of the . . . John Doe [d]efendants" named in his proposed amended complaint. Dkt. No. 43 at 3, 5. Plaintiff provides "a list of descriptions, and all additional identifying information currently available to [him] that pertain to ascertaining the true identity of the John Doe [d]efendants[.]" Id. at 5-6.

In light of the foregoing, pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d. Cir. 1997) (per curiam), the undersigned recommends requesting that the New York State Attorney General's Office, through counsel for defendants Mahan, McDonald, Mason, LaFountain, and Raimo, attempt to ascertain the full names of John Doe #2, John Does #7-10, and John Does #19-20. The undersigned also recommends requesting the New York State Attorney General's Office, to the extent that it is able to identify any of the

Doe defendants, provide the addresses where the defendant(s) so identified can currently be served. The New York State Attorney General's Office need not undertake to defend or indemnify these individuals at this juncture, only if and when they appear. This recommendation merely provides a means by which plaintiff may name and properly serve the defendants as instructed by the Second Circuit in <u>Valentin</u>.

### V. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that the Court hold an exhaustion hearing to determine if administrative remedies were available to plaintiff; and it is further

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 14) be **DENIED without prejudice**, subject to renewal upon completion of the exhaustion hearing; and it is further

**RECOMMENDED**, that plaintiff's request for perjury charges (Dkt. No. 41) be **DENIED**; and it is further

**RECOMMENDED**, that plaintiff's motion to amend (Dkt. No. 43) be **GRANTED in part** insofar as the amended complaint asserts Eighth Amendment excessive force claims against Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, and John Does #7-10, as well as Eighth Amendment failure-to-intervene claims against LaFountain, John Does #7-10, and John Does #19-20; and it is further

**RECOMMENDED**, that plaintiff's motion to amend (Dkt. No. 43) otherwise be **DENIED**; and it is further

**RECOMMENDED**, that, if this Report-Recommendation and Order is adopted, the District Judge direct the Clerk to docket the proposed amended complaint (Dkt. No. 43-1) as the operative pleading in this action; and it is further

 **RECOMMENDED**, that, if this Report-Recommendation and Order is adopted, the District Judge direct the Clerk to revise the docket to reflect Mahan, John Doe #2, McDonald, LaFrance, Mason, Raimo, LaFountain, John Does #7-10, and John Does #19-20 as the defendants in this action; and it is further

**RECOMMENDED**, that, if this Report-Recommendation and Order is adopted, the District Judge direct the Clerk to issue summonses and forward them, along with a copy of the amended complaint, to the United States Marshals Service for service of process on all named defendants; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, defendants answer deadline be stayed pending the outcome of the exhaustion hearing, and reset upon its completion; and it is

**RECOMMENDED**, that, if this Report-Recommendation and Order is adopted, the District Judge direct the New York State Attorney General's Office to make all reasonable efforts to identify the John Doe defendants and produce the information specified above regarding the identities of the Doe defendants within thirty (30) days of the filing date of the District Judge's Decision and Order; and it is further

**ORDERED**, that the Clerk amend the case caption to reflect Justin Mahan as the lead defendant; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[22]

Dated: February 29, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[22] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).