UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES D. HILTON,

                             **Plaintiff,**

  vs.                                                    9:23-CV-209
                                                         (MAD/PJE)
JUSTIN MAHAN, *et al.*,

                             **Defendants.**
_____

**APPEARANCES:**                                           **OF COUNSEL:**

**JAMES D. HILTON**
**16-A-4943**
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

**THE LAW FIRM OF CESAR DE CASTRO, P.C.**     **SETH H. AGATA, ESQ.**
111 Fulton Street – 602
New York, New York 10038
Attorneys for Plaintiff[1]

**OFFICE OF THE NEW YORK**                  **OLIVIA R. COX, AAG**
**STATE ATTORNEY GENERAL**            **DAVID C. WHITE, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff, an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action on February 3, 2023, pursuant to 42 U.S.C. § 1983, alleging that Defendants Justin Mahan, Andrew McDonald,

---

[1] Seth Agata, Esq. was appointed as counsel for Plaintiff for the limited purpose of the exhaustion hearing and post-hearing submissions.

Bryan Mason, Matthew LaFountain, Eugene Raimo, Jr., John Does #1-10, and Jane Does #1-2, violated his constitutional rights under the Eighth Amendment. *See* Dkt. No. 1. Generally, Plaintiff's claims relate to a use of force incident that occurred on June 21, 2022, when Defendants and other officers entered Plaintiff's cell and allegedly assaulted him. Upon initial review, the Court determined that Plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Defendants Mahan, McDonald, Mason, LaFountain, Ramos, and John Does #1-3 survived *sua sponte* review. *See* Dkt. No. 7 at 9.

On May 24, 2023, Defendants moved for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies. *See* Dkt. No. 14. Plaintiff opposed the motion and subsequently filed a letter requesting that perjury charges be brought against Alexandria Cutler, the Inmate Grievance Program ("IGP") Supervisor at Great Meadow Correctional Facility ("Great Meadow C.F."). *See* Dkt. No. 41. On December 8, 2023, Plaintiff also filed a motion to amend his complaint, as well as a request pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997), requesting assistance in identifying the John and Jane Doe defendants. *See* Dkt. Nos. 43 & 43-1. Also, on August 14, 2023, Plaintiff filed a document which has been labeled as a motion for a preliminary injunction, in which Plaintiff generally claims about "mail tampering" that has been occurring at Great Meadow C.F. *See* Dkt. No. 32.

In a February 29, 2024 Report-Recommendation and Order, Magistrate Judge Hummel recommended that Defendants' motion for summary judgment be denied, Plaintiff's request for perjury charges be denied, and Plaintiff's motion to amend be granted in part and denied in part. *See* Dkt. No. 49. This Court adopted Magistrate Judge Hummel's Report-Recommendation and Order and directed that an exhaustion hearing take place. Following the exhaustion hearing, Defendants' renewed their motion for summary judgment. On January 3, 2025, Magistrate Judge Hummel issued a Report-Recommendation and Order recommending that Defendants' motion be

2

granted. *See* Dkt. No. 103. Currently before the Court is the Report-Recommendation and Order and Plaintiff's objections thereto.

## II. BACKGROUND

For a complete recitation of the relevant background, the Court refers the parties to Magistrate Judge Hummel's February 29, 2024 Report-Recommendation and Order. The Court will limit its discussion to the facts relevant to resolving the issue of exhaustion.

During the exhaustion hearing, Defendants presented evidence from three witnesses[2] in support of their argument that Plaintiff failed to grieve the alleged June 21, 2022 incident. Specifically, Defendants called David Demo, Matthew DeGregory, and Alexandria Cutler.

First, David Demo testified that he was a Correction Sergeant at Great Meadow Correctional Facility ("Great Meadow") in the summer of 2022. *See* Dkt. No. 101-2 at 6. Part of Sergeant Demo's area consisted of the Special Housing Unit ("SHU") where incarcerated individuals were housed for disciplinary reasons. *See id.* at 9. Sergeant Demo testified that incarcerated individuals had access to the mail and grievance system while housed in the SHU. *See id.* Incarcerated individuals placed correspondence on the hatchway of their cell where it was picked up and processed. *See id.* at 9-10.

Similarly, Matthew DeGregory testified that he was working at Great Meadow in the summer of 2022 providing temporary coverage as an IGP supervisor. *See id.* at 13. Mr. DeGregory provided coverage from January to approximately June or July 2022. *See id.* at 14. As an IGP supervisor, once he received a grievance he would read it, assign it a number, and forward it along for investigation. *See id.* at 16. Mr. DeGregory testified that incarcerated individuals housed in the SHU had full access to the grievance system at Great Meadow in the

---

[2] The Court received the declaration of Rachael Seguin into evidence in lieu of live testimony. *See* Dkt. No. 101-2 at 4.

summer of 2022 and that the grievances would be collected from the incarcerated individual's cell and brought to the grievance office. *See id.* at 15-16. Mr. DeGregory did not receive a grievance from Plaintiff dated June 29, 2022, and testified that, if he had, he would have read it, assigned it a number, and forwarded it for investigation, as was his practice. *See id.*

Finally, Alexandria Cutler testified that she worked as an IGP supervisor at Great Meadow in the summer of 2022. *See* Dkt. No. 101-2 at 19-20. Incarcerated individuals at Great Meadow submitted grievances either on a grievance form or a piece of paper. *See id.* at 22. Incarcerated individuals housed in the SHU submitted grievances through the facility mail system. *See id.* Once a grievance was received, they were coded and submitted for further investigation as necessary. *See id.* at 24. If a grievance was untimely, it was rejected and maintained in her office. *See id.* at 25. Ms. Cutler testified that Plaintiff had full access to the grievance system to file a grievance related to the alleged June 21, 2022 assault, but did not do so until the time limit had elapsed. *See id.* at 26-27. Notably, Ms. Cutler testified that Plaintiff had access to, and did, submit correspondence and grievances to the Central Office Review Committee ("CORC"), while housed at Great Meadow. *See id.* at 32.

During the hearing, Defendants introduced evidence that Plaintiff utilized the grievance system on multiple occasions during the time at issue. Specifically, during the time period that Plaintiff claims to have attempted to file a grievance dated June 29, 2022, he submitted a grievance regarding medical treatment stemming from the alleged June 21, 2022 assault before allegedly attempting to file a grievance regarding the assault itself. *See id.* at 41. Additionally, Plaintiff submitted multiple grievances and correspondence during this time, including to CORC, the highest level of the grievance process. *See id.* at 50-59; *see also* Dkt. Nos. 101-3, 101-4 & 101-5.

During his testimony, Plaintiff explained that he filed grievances at other facilities without issue. *See* Dkt. No. 101-2 at 38. Additionally, Plaintiff testified that he submitted a grievance while housed in the SHU on June 26, 2022 without issue. *See id.* at 39-40. This grievance, which was related to medical treatment for injuries allegedly sustained on June 21, 2022, was submitted, processed, and a hearing was held at Great Meadow. *See id.* at 39. When asked why Plaintiff waited to attempt to file the grievance about the actual assault until after submitting the grievance related to medical care needed from the assault, Plaintiff claimed that he did not finish the grievance regarding the alleged assault until June 29, 2022, due to its complexity. *See id.* at 41-42.

As to the June 29, 2022 grievance, Plaintiff testified that the correction officer who collected the grievance was non-confrontational and collected grievances and mail from him in the SHU without issue. *See id.* at 40-43. Plaintiff testified that he saw that his grievance had been taken on June 29, 2022 because he stayed up to ensure that it was picked up. *See id.* at 44.

Finally, Plaintiff testified that he entered DOCCS custody in 2016 and that, upon his arrival at Great Meadow, he went through an orientation during which information related to the grievance process was presented. *See id.* at 45-46. Plaintiff testified that he understands the DOCCS grievance process, including the appeals process, and the timeframes for when grievances must be filed. *See id.* at 46-52.

### III. DISCUSSION

**A.   Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely

5

recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

6

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252 (emphasis and alterations in original)). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

B.  **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 578 U.S. 632 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the

7

applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process, commonly referred to as the Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to the Central Office Review Committee ("CORC"). *See id.* § 701.5(d). If all three levels of review are exhausted, then the prisoner may seek relief in a federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524).

As an affirmative defense, the party asserting failure to exhaust administrative remedies bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *See Fox v. Gifford*, No. 9:20-cv-797, 2023 WL 2410870, *8 (N.D.N.Y. Feb. 16, 2023); *Soria v. Girdich*, No. 9:04-cv-727, 2007 WL 479087, *2 (N.D.N.Y. Dec. 6, 2007). However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013). "As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it." *Id.*; *see also Grant v. Kopp*, No. 9:17-

cv-1224, 2019 WL 368378, *4, 8 (N.D.N.Y. Jan. 3, 2019); *Mojica v. Murphy*, No. 9:17-cv-0324, 2021 WL 1318168, *5 (N.D.N.Y. Apr. 8, 2021).  Thus, although "'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was unavailable, the ultimate burden of proof, by a preponderance of the evidence, with respect to the exhaustion defense remains, at all times, with the defendant.'" *Ferguson v. Mason*, No. 9:19-cv-927, 2021 WL 862070, *3 (N.D.N.Y. Jan. 7, 2021) (citing *Grant*, 2019 WL 368378, at *4, 8).

C.   **Application**

In its March 22, 2024 Order, the Court held that it was necessary to "hold[] a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence of the parties present to determine whether Plaintiff exhausted his administrative remedies or if the administrative remedies were unavailable." Dkt. No. 50 at 7.  In *Williams v. Correction Officer Priatno*, 829 F.3d 118 (2d Cir. 2016), the Second Circuit described three circumstances in which an administrative remedy is not capable of use to obtain relief: (1) the administrative remedy "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123-24.  This Court, in its order, stated that the basis for holding the exhaustion hearing was to address the three circumstances highlighted in *Williams*.  *See* Dkt. No. 50 at 6-7.

Initially, Magistrate Judge Hummel found that Defendant established that there was a grievance process in effect at Great Meadow during the time in question.  *See* Dkt. No. 103-1 at 4-8.  Then, Magistrate Judge Hummel described the evidence offered by the parties and found

that none of the exceptions stated in *Williams* applies and that Plaintiff, therefore, failed to exhaust his administrative remedies. *See id.*

In his objections, Plaintiff first argues that Magistrate Judge Hummel erred because the record is "inherently flawed" with an "obvious lack of proof." Dkt. No. 105 at 12. Further, Plaintiff claims it was Defendants' responsibility to produce a witness with "knowledge of whether plaintiff filed a grievance while in the Special Housing Unit so that there was, factually, no proof that he did not file a grievance." *Id.* at 6. Plaintiff is incorrect. As Defendants note, the burden of production fell on Plaintiff to present sufficient evidence to support that he did, in fact, file a grievance, or that his remedies were unavailable. *See Ferguson*, 2021 WL 862070, at *3 (citation omitted); *see also Grant*, 2019 WL 368378, at *8. Plaintiff failed to satisfy this burden, be it through production of physical records or testimony of witnesses. *See Blake v. Porlier*, No. 9:18-cv-1008, 2019 WL 7484052, *5 (N.D.N.Y. Oct. 4, 2019) ("Courts within the Second Circuit have continuously held that 'mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations'") (quotation and other citations omitted).

The majority of Plaintiff's objections to Magistrate Judge Hummel's recommendations center on the fact that the grievance process at issue in this case was "prohibitively opaque" and, therefore, unavailable under *Williams*. *See* Dkt. No. 105 at 4-6, 12-16, 18-21. Plaintiff argues that because his June 29, 2022 grievance was never filed with the IGP and given a grievance number, he was excused from exhausting under *Williams*. *See id.* The situation in the present matter, however, is readily distinguishable from *Williams*.

In *Williams*, the Second Circuit considered whether administrative remedies had been "actually available" to the plaintiff under *Ross v. Blake*, after the district court granted the defendants' motion to dismiss for failure to exhaust. *See Williams*, 829 F.3d at 120. The plaintiff

10

alleged that, while housed in the SHU, he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *See id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *See id.* at 121. He never received a response to his grievance and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *See id.* at 124. The defendants relied on a DOCCS regulation providing that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y.C.R.R. § 701.6(g)(2)).

> [D]efendants [outline] three options that would be presented to an inmate following his appeal of an unfiled grievance: (1) if it is still within 21 days of the incident, the inmate can re-file the complaint; (2) if it is beyond 21 days but within 45 days of the incident, the inmate can request an exception to the 21-day time limit if he can show mitigating circumstances; or (3) if it is more than 45 days since the incident, the inmate may file a separate complaint grieving the denial of an extension to the time limit.

*Id.* at 125. The *Williams* court rejected the defense arguments stating: "These options are pieced together from various provisions in the regulations that do not involve appeals of grievances but provide instructions on the timelines that apply to the filing of new complaints. See N.Y.C.R.R. tit. 7, § 701.5(a)(1); id. § 701.6(g)(1)(i)(a); id. § 701.6(g)(1)(ii)." Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126.

Unlike *Williams*, in the present matter, Magistrate Judge Hummel found Plaintiff's testimony that he attempted to file his grievance on June 29, 2022, to be incredible. Specifically, Magistrate Judge Hummel found as follows:

> Defendants have established through credible evidencethat in the summer of 2022 there was an established grievance

> procedure in effect at the Great Meadow Correctional Facility. The remaining question is whether plaintiff in fact filed a grievance and exhausted his administrative remedies. The Court answers that question in the negative.
>
> The Court has had the unique opportunity to observe the testimony of the witnesses, consider their demeanor, and evaluate their credibility. The Court finds credible plaintiff's testimony that he had filed grievances at other facilities without incident. He submitted a grievance while housed in the SHU on June 26, 2022, related to the failure to provide proper medical treatment for injuries allegedly sustained on June 21, 2022. That grievance was picked up in the SHU, processed, and a hearing was conducted within two months. Plaintiff did not raise the issue of the unfiled grievance during the hearing related to that medical treatment grievance.
>
> It is noteworthy that plaintiff did not file a grievance relating to the alleged excessive force at that time. Plaintiff's explanation that he did not file the excessive force grievance at that time because it was more complicated is not credible, as the grievances arise out of the same incident and are similar in length. In addition, plaintiff was unable to identify or describe in any detail the correction officer who allegedly picked up the grievance.

Dkt. No. 103-1 at 6-7.

The Court agrees with Magistrate Judge Hummel that Plaintiff's testimony at the exhaustion hearing was not credible regarding his filing of the June 29, 2022 grievance. Since Plaintiff failed to credibly testify that he attempted to timely file his June 29, 2022 grievance, the prohibitively "opaque" procedure discussed in *Williams* is not at issue. *See Ozzborn v. Cornell*, No. 9:17-CV-1039, 2021 WL 2227829, *5 (N.D.N.Y. June 2, 2021).

During the hearing, Plaintiff testified that he filed grievances at other facilities without issue and provided no evidence of issues at Great Meadow other than his own self-serving testimony. *See* Dkt. No. 101-2 at 28. In fact, Plaintiff testified that he submitted a grievance while housed in the SHU on June 26, 2022, without issue. *See id.* at 39-40. This grievance,

which was related to medical treatment for injuries allegedly sustained on June 21, 2022, was not only submitted and processed, but a hearing was held within two months. *See id.* at 39.

When asked by Plaintiff waited to attempt to file the grievance about the actual assault until after submitting the grievance related to medical care needed from the assault, he responded with incredible testimony. Plaintiff claimed that he did not finish the grievance regarding the alleged assault until June 29, 2022, due to its complexity. *See id.* at 41-42. Not only does the order of events not make sense, but Plaintiff's claims are belied by the documents themselves. Indeed, the alleged grievance dated June 29, 2022, consists of one page claiming that Plaintiff was subject to excessive force on June 21, 2022, and the grievance dated June 26, 2022, consists of one page regarding medical treatment allegedly not provided. *See* Dkt. No. 101-3 & 101-4. Plaintiff's testimony that he needed additional time to draft a one-page document after submitting a one-page document regarding medical treatment on June 26, 2022, was properly not credited.

Plaintiff asks that the Court believe that he successfully submitted a grievance regarding medical treatment he was being denied for injuries from the alleged June 21, 2022 incident before submitting a grievance regarding the actual alleged assault. Plaintiff's reasoning for this, that the June 29, 2022 grievance was more complex, is belied by the record, since both the June 26 and June 29 grievances were the same length – a single page. *See* Dkt. Nos. 101-3 & 101-4.

Moreover, Plaintiff admittedly received a full hearing on August 16, 2022, regarding the June 26, 2022 grievance. *See* Dkt. No. 101-2 at 48-49. Plaintiff made no mention of the allegedly unfiled and unanswered June 29, 2022 grievance during this hearing despite both knowing the grievance process and allegedly not having received a response to the June 29 grievance. Instead, Plaintiff waited until August 24, 2022, to submit the grievance dated June 29, 2022 – well beyond the time frame for submission. Plaintiff waited longer still to indicate that

there was an issue with filing grievances, not submitting anything regarding those claims until September 2, 2022. *See* Dkt. No. 101-5.

Accordingly, the Court agrees with Magistrate Judge Hummel that Plaintiff's testimony regarding the submission of his June 29, 2022 grievance was entirely incredible and that this action must be dismissed for Plaintiff's failure to exhaust. *See Ozzborn*, 2021 WL 2227829, at *5 (granting the defendants' motion for summary judgment where the plaintiff testified during a "deposition that he filed a grievance by leaving a plain envelope addressed to the grievance committee for the mail personnel to collect," but did not submit documentary evidence to support the contention and did not verbally follow up with anyone at the prison about the grievance); *Rodriguez v. Cross*, No. 9:15-cv-1079, 2017 WL 2791063, *6-7 (N.D.N.Y. May 9, 2017) (holding that the plaintiff's conclusory assertions that he submitted a grievance by mail but it was never received were insufficient to demonstrate that administrative remedies were unavailable and noting that although the plaintiff never followed up regarding his grievance, he successfully filed other grievances).[3]

## IV. CONCLUSION

After carefully reviewing Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff's objections, and the entire record in this matter, the Court hereby

---

[3] In *Perttu v. Richards*, 605 U.S. 460 (2025), the Supreme Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Perttu*, 605 U.S. at 479. Here, because Plaintiff's amended complaint alleges excessive force stemming from the incident on June 21, 2022, the merits of Plaintiff's claim are not intertwined with the issue of PLRA exhaustion. Therefore, the issue of exhaustion in this case is properly decided by the Court and need not be submitted to a jury under *Perttu*. *See Marsh v. Reckert*, No. 4:23-cv-128, 2025 WL 1928608, *2 (E.D. Mo. July 14, 2025) (holding that *Perttu* did require the question of exhaustion to be submitted to the jury where the plaintiff claimed that the defendant used excessive force, which was unrelated to the filing of grievances); *Hill v. Tisch*, No. 2:02-cv-3901, 2025 WL 1871142, *7-8 (E.D.N.Y. July 7, 2025) (holding that exhaustion and the merits were not intertwined where the plaintiff raised excessive force, failure to protect, and deliberate indifference to medical care claims).

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 103) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Defendants' renewed motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that Plaintiff's *pro bono* counsel, Seth Hugh Agata, Esq., is **RELIEVED** as *pro bono* counsel in this matter with the thanks of the Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 13, 2025
      Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge